**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ALAN DONNELLY, on behalf of himself and others similarly situated, | ) ) ) | |
| Plaintiff, | ) | 09 C 2264 |
| | ) | Judge Guzman |
| v. | ) | |
| | ) | |
| NCO FINANCIAL SYSTEMS, INC., | ) | JURY DEMANDED |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S MOTION TO COMPEL**

Alexander H. Burke
Burke Law Offices, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com
www.BurkeLawLLC.com

Plaintiff respectfully requests that this Court compel defendant NCO Financial Systems, Inc. to properly respond to discovery. In support of this motion, plaintiff states:

This is a Fair Debt Collection Practices Act 15 U.S.C. §1692 et seq. ("FDCPA") and Telephone Consumer Protection Act, 47 U.S.C. § 227(b) ("TCPA") action based upon the defendant debt collection firm using an automatic dialing system and automatic voice message system to call debtors' cell phones. Damages under the TCPA are $500 per illegal call, strict liability.

There seems to be no question that the "Mercury" predictive dialer that NCO uses is an "automatic telephone dialing system" within the meaning of the TCPA. *Hicks v. Client Services, Inc.*, 2009 WL 2365637 (S.D.Fla. June 9, 2009) (entering summary judgment in plaintiff's favor).

An affidavit provided in NCO's motion to stay discovery indicates that NCO makes about a million autodialed and prerecorded message telephone calls per month.

The focus of <u>Part I</u> of this motion to compel is information regarding a class list and NCO's defenses. NCO has attempted to assert a "prior express consent" defense in its discovery responses pursuant to 47 U.S.C. § 227(b)(1)(A).[1] The law is clear that it is the defendant's burden to prove this defense. *In re Rules and Regulations Implementing the TCPA*, GC Docket 02-278; 07-232 (January 4, 2008) ("FCC Ruling" attached hereto at <u>Appendix A</u>) at ¶13; *Hicks v.*

---

[1] There is a question as to what constitutes "prior express consent." While the FCC has held that providing one's cell phone number in an application for credit is sufficient, one Court has held that this does not pass the *Chevron* deference test because such a construction is contrary to the statute. *Leckler v. CashCall*, 554 F.Supp.2d 1025, 1029 (S.D.Cal. 2008); *In re Rules and Regulations Implementing the TCPA*, GC Docket 02-278; 07-232 (January 4, 2008) ("FCC Ruling"). Indeed, the FCC decision "deemed" a credit application that did not mention calls to cell phones to be "prior <u>express</u> consent" to receive autodialed and prerecorded messages on a cell phone. However, the *Leckler* Court vacated its ruling upon reconsideration when defendant CashCall argued that the "Hobbs Act," 28 U.S.C. § 2342, prohibits an Article III district judge from doing a *Chevron* analysis of an FCC final order. *Leckler v. Cashcall, Inc.*, 2008 WL 5000528 (N.D.Cal. Nov 21, 2008). The FCC Ruling also holds a debt collector may be liable for violating the TCPA, and that the creditor is required to come up with evidence of prior express consent if it wants to assert such a defense. FCC Ruling at 7 & fn 38.

*Client Services, Inc.*, 2009 WL 2365637, at * 5 (S.D.Fla. June 9, 2009).  Plaintiff therefore issued discovery relating to the defense.  NCO has taken the position that it cannot/will not provide such information, and has filed a motion to stay discovery while it tries to knock Donnelly out as a plaintiff thorough a summary judgment motion.  Plaintiff needs the information relating to the defense in order to prepare his case, and therefore requests that the Court compel The Bureaus to provide all information relating to the defense by date certain, or bar it from asserting the defense.

Part II of the motion concerns information and documents regarding the Automatic Dialer.  Plaintiff must prove that the Automatic Dialer is the type of system the TCPA regulates, and must prove that NCO's actions were "willful."  The FCC has ruled that any telephone system that has "the capacity to dial numbers without human intervention" is regulated.  FCC Ruling at ¶ 13.  Further, NCO's discovery responses indicate that it plans to argue that it did not know it was violating the TCPA.  "Willful" is defined in the TCPA at 47 U.S.C. § 312(f).  NCO has provided some documents, and promised to provide more, but filed a motion to stay discovery instead.

Part III of the motion concerns miscellaneous other materials that plaintiff may need to prove his case at trial.

**A.    Meet and Confer**

Plaintiff issued discovery on May 12, 2009.  Exhibit 1.  NCO responded to those requests after an agreed extension on July 10, 2009.  Exhibit 2.  On August 28, 2009, plaintiff's counsel Alex Burke sent an extensive discovery meet and confer email attached Exhibit 3 to defense counsel James Schultz and Bryan Shartle asking for revised responses, and a commitment from

NCO for a date-certain to provide such responses. NCO committed to providing revised responses by September 24, 2009.

Mr. Schultz called Mr. Burke on the telephone and indicated that NCO was having trouble with compiling a class list because it makes so many autodialer calls on or about September 24, but did not ask for more time, and did not provide additional responses for other issues in the case.

Instead, NCO filed a motion to stay discovery while it drafts a motion for summary judgment on liability. Attached to its motion is Exhibit 4, an affidavit purportedly explaining why it should not have to produce information concerning its defenses. Apparently, NCO is not interested in doing discovery anymore. Plaintiff therefore moves to compel.

**B.**     <u>**Discovery Generally**</u>

"Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). The Rules have broadened the scope of discovery to "any matter, not privileged, that is relevant to the claim or defense of any party.... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1).

"[T]he discovery-deposition provisions of the Federal Rules, were intended to insure 'proper litigation' by making the trial less a game of blindman's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *Goldman v. Checker Taxi Co.*, 325 F.2d 853, 855 (7th Cir. 1963) (internal citations and quotations omitted). Furthermore, complete interrogatory responses may help the parties avoid unnecessary

depositions and further cost to the parties. *In re Shopping Carts Antitrust Litigation*, 95 F.R.D. 299, 307-308 (S.D.N.Y. 1982).

"[T]he mere statement by a party that the interrogatory was "overly broad, burdensome, oppressive and irrelevant" is not adequate to voice a successful objection to an interrogatory. On the contrary, the party resisting discovery "must show specifically how ... each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive." *Josephs v. Harris Corp.,* 677 F.2d 985, 992 (3d Cir. 1982).

Compelling production of materials sought promotes justice and quick resolution a matter. *Yancey v. Hooten*, 180 F.R.D. 203 (D.Conn. 1998) (compelling discovery in FDCPA case). *Lucas v. GC Services*, 226 F.R.D. 328 (N.D.Ind. 2004) (FDCPA 1692g action) (sister case lost merits on appeal) compelling all discovery requests as sanction. "The defendants do not get to determine unilaterally the scope and timing of discovery." *Lucas v. GC Servs. L.P.*, 226 F.R.D. 328, 331 (N.D. Ind. 2004).

An attorney is required to monitor discovery compliance and ensure that the client has both preserved potentially discoverable electronic materials, and that the client has performed a reasonable search. See Fed.R.Civ.P. 26(b)(2); *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422 (S.D.N.Y. 2004); *Qualcomm Inc. v. Broadcom Corp.*, 2008 WL 66932 (S.D.Cal. Jan 07, 2008), vacated in irrelevant part, 2008 WL 638108 (S.D.Cal. Mar 05, 2008). The result of this is likely waiver. *Ner-Tamid Congregation of North Town v. Krivoruchko*, 2009 WL 152587, 08 C 1261 (N.D.Ill. Jan. 22, 2009); *Mosley v. City of Chicago*, 252 F.R.D. 445 (N.D.Ill. 2008). The result of the failure to perform an adequate search is wavier. *Zubaluke*.

Compelling production of the materials plaintiff seeks herein will promote swift and just resolution of this case.

C.    **Argument:  Materials Sought and Why**

**Part I  -  "Prior Express Consent."**

As explained *supra*, plaintiff expects NCO to argue that it has a "prior express consent" defense to liability.   At least, this is the purported basis for its "forthcoming" summary judgment motion even though the Amended Answer does not raise this defense.   The argument plaintiff expects is that each of the class members provided "prior express consent" to be called by NCO on his/her cellular phone using its Automatic Dialer and using artificial or prerecorded voice messages, and NCO is therefore not liable.

Plaintiff issued numerous discovery requests aimed at learning the basis for this defense.

> Int. 3: If you contend that any person responsive to interrogatories 7 and/or 8 consented to be called on their cellular telephone by you, identify the basis for such contention specifically for each person.

> Int. 4: Identify all telephone numbers from which you made calls using an automatic telephone dialing system, and/or using an artificial or pre-recorded voice. Include the number itself, the dates the number was used with such equipment, the specific equipment used to make such calls, and what recording was used as part of the "artificial or pre-recorded voice", if any.

> Int. 7: State the number and identify each person with an address in Illinois, Indiana or Wisconsin, (a) to whom NCO either on its own or through a person authorized by NCO; (b) made a call to the person's cellular telephone; (c) through use of an automatic telephone dialing system, and/or using an artificial or pre-recorded voice; (d) where the recipient had not placed his/her cellular telephone number on an application with the creditor; (e) and the call was made at any time after August 19, 2008.

> Int. 8: Identify and provide the number for all persons you called where the caller identification was set to show the recipient the telephone number 866-473-9021 since August 19, 2008. Include their telephone number, address, email, the date called and indicate whether an automatic telephone dialing system was used to make the call, and whether an artificial or pre-recorded voice.

Int. 10: For any person identified in interrogatories 7 and 8, please provide any and all evidence of express consent to receive telephone calls on a cellular telephone.

Doc. Req. 10. For each person identified in response to interrogatories 7 & 8, please provide any and all documents or data that show the individual's consent to receive telephone calls on a cellular telephone using: (a) an automatic telephone dialing system; (b) an artificial voice; or (c) a pre-recorded voice.

Doc. Req. 11. For each putative class member as the classes are defined in the Complaint, produce all documents that demonstrate that defendant had prior express consent to call that person's cellular telephone with respect to any particular debt. [2]

Doc. Req. 31:  All documents relating to the maintenance by defendant of policies, practices or procedures adapted to avoid calling persons who did not consent, or revoked consent, to be called on their cellular telephones using an automatic telephone dialing system, using an artificial or pre-recorded voice.

Doc. Req. 32:  All documents, including all evidence of consent to receive automatic telephone dialing system, and/or using an artificial or pre-recorded voice calls on a cellular telephone, for each person with an address in Illinois, Indiana or Wisconsin, (a) to whom NCO either on its own or through an person authorized by NCO; (b) made a call to the person's cellular telephone; (c) through use of an automatic telephone dialing system, and/or using an artificial or pre-recorded voice; (d) where the recipient had not placed his/her cellular telephone number on an application with the creditor; (e) and the call was made at any time after August 19, 2008.

Doc. Req. 33: All documents, including all evidence of consent to receive automatic telephone dialing system, and/or using an artificial or pre-recorded voice calls on a cellular telephone, for each person you called where the caller identification was set to show the recipient the telephone number 866-473-9021 since August 19, 2008.

These materials are clearly discoverable.  Fed.R.Civ.P. 26(b)(1) provides:

Unless otherwise limited by court order, the scope of discovery is as follows:

Parties may obtain discovery <u>regarding any nonprivileged matter that is</u> <u>relevant to any party's claim or</u> **<u>defense</u>** -- including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.  [Emphasis added.]

*Morris v. Swank Educ., Enters.*, case no. 04 C 50056, 2004 U.S. Dist. LEXIS 16655 (N.D. Ill. Aug.

20, 2004); *Thomas v. Bowman Heintz Boscia & Vician, P.C.*, 2008 WL 5070471 (S.D.Ind. Nov. 26,

---

[2] Plaintiff has narrowed the class definition to persons with 312 and 773 area codes, and is willing to narrow the scope of these requests similarly.

2008); *EEOC v. Bloomin' Apple Rockford I, LLC*, case no. 04 C 50375, 2006 U.S. Dist. LEXIS 2708 (N.D. Ill. Jan. 24, 2006); *Trevino v. ACB American, Inc.*, 232 F.R.D. 612, 617 (N.D.Cal. 2006); cf. *Martinez v. Baldwin Steel Co.-Chicago Div.*, 2000 WL 1029228 (N.D.Ill. July 26, 2000) (holding that affirmative defenses were waived because they were raised at the eleventh hour of discovery period).

A plaintiff may also take discovery on class certification issues. *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351, n.13 (1978); *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890 (7th Cir. 1981); *Accord, Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 571-72 (2d Cir. 1982); *Dillon v. Bay City Construction Co., Inc.*, 512 F.2d at 804 (4th Cir. 1979); *Parker v. Risk Mgmt. Alternatives, Inc.*, 206 F.R.D. 211, 214 (N.D.Ill. 2002) (FDCPA Case); *Morris v. Risk Mgmt. Alternatives, Inc.*, 203 F.R.D. 336, 341( N.D.Ill. 2001) (FDCPA case); *Nash v. City of Oakwood*, 90 F.R.D. 633, 636-637 (S.D. Ohio 1981); *National Org. for Women v. Sperry Rand Corp.*, 88 F.R.D. 272, 277 (D. Conn. 1980).

Where there is a burdensome objection, the Court should weigh the probative value of the information requested versus the stated burden. "As the objectors, the … defendants must demonstrate that [the burden is indeed, undue.]" *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 351, 360 (N.D.Ill. 2005) (Cole, J.) The "mere" fact that discovery requires work and may be time consuming is not sufficient to establish undue burden. *Fagan v. District of Columbia*, 136 F.R.D. 5, 7 (D.D.C. 1991); see also, *Luey v.Sterling Drug, Inc.*, 240 F. Supp. 632, 634-35 (W.D. Mich. 1965); *United States v. Nysco Labs.*, 26 F.R.D. 159, 161-62 (E.D.N.Y. 1960).

In this case, NCO has explained that there is a lot of information to parse through, <u>Exhibit 4</u>, but has not made any attempt to detail how burdensome responding to these

requests would be. See *Wagner v. Dryvit Systems, Inc.*, 208 F.R.D. 606, 610 (D.Neb. 2001); *Kozlowski v. Sears Roebuck & Co.*, 73 F.R.D. 73, 76 (D.Mass. 1976)("To allow a defendant whose business generates massive records to frustrate discovery by creating an inadequate filling system [here, by not creating an adequate indexing system], and then claiming undue burden, would defeat the purposes of the discovery rules.").

Plaintiff believes that NCO has planned a circular attack on class certification: argue that it does not have to provide the information until the class is certified, and then argue in its opposition to class certification that the fact that it raised a "consent defense" bars certification.

Granted, if evidence of a defense exists, there may be a lot of information for NCO to come up with. However, it is not consistent with Rule 26, and would be fundamentally unfair, to permit a party to assert a defense and then refuse to provide evidence supporting that defense.

The motion to compel the defense-related information boils down to this question: is it fair to permit a party to assert a defense, and then argue that it does not have to provide discovery regarding that defense because it would cost too much? Plaintiff thinks not, and requests that this Court either compel NCO to produce all information it will rely upon by a date-certain, or rule that NCO barred from raising the defense.[3]

## Part II - Information and Materials Concerning the Automatic Dialer and TCPA Compliance

---

[3] Again, NCO has not asserted this defense as an affirmative defense. Plaintiff seeks this discovery because be believes that NCO will try to amend its answer to assert such later in the case. In filing this motion, plaintiff does not mean to give up any right to argue that NCO's failure to plead this affirmative defense constitutes a waiver of such.

Part of what plaintiff will have to prove in this case is that NOC's "Automatic Dialer" is an "automatic telephone dialing system" under the TCPA, as interpreted by the Federal Communications Commission in the January 4, 2009 FCC Ruling. Because liability likely hinges on how the system is used, plaintiff has essentially requested all documents and information that have to do with the Automatic Dialer.

For example, plaintiff issued numerous requests for admission asking whether NCO would agree that it used an automatic telephone dialing system or artificial voice message to make calls to plaintiff. See RFA 1 through 20. NCO denied each of these, arguing that it did not violate the statute. Plaintiff requested that NCO be more transparent with its responses, and admit or deny whether it used any sort of automated predictive dialer to call plaintiff. NCO has refused, so plaintiff moves to compel.

This is not NCO's first time dealing with the TCPA. Plaintiff knows that it was sued in California in the Bellows v. NCO, 3:07 C 1413 case, which it settled on a classwide basis. Information concerning previous lawsuits may bear on willfulness, and will help plaintiff more fully understand the autodialer it uses, and how it attempts to comply with the law.

Int. 5: Identify each complaint, lawsuit or formal or informal proceeding where defendant was accused of violation of the TCPA since January 1, 2004.

Int. 9: Identify all efforts you have ever made in order to attempt to comply with the TCPA, 47 U.S.C. § 227, provisions restricting use of an automatic telephone dialing systems and using an artificial or pre-recorded voice, and the requirement that prerecorded voice messages include the name of the company calling, for calls to cellular phones. Be specific. Please include all actions you have taken or considered and did not take. Include the dates, persons involved in the decision making process and why any specific action was taken and not taken.

Int. 11: Provide the basis for any position that the Bellows case, settlement or stipulation and order for injunction affects your liability or defenses in this case.

Doc. Req. 4. All documents related to Bellows v. NCO, case no. 3:07-cv-01413-W-AJB, including but not limited to transcripts, formal and informal discovery responses, documents, others things and objections.

Doc Req. 6: All documents you have than mention compliance, or non-compliance, with the TCPA.

Doc Req. 7: All documents, notes, presentation, powerpoint, and invoices regarding seminars, tele-seminars or manuals that mention the TCPA.

Doc Req. 8: . All communications that mention or concern compliance with the TCPA.

Doc. Req. 9. All documents and things related to "confirmatory discovery" in the Bellows v. NCO, case no. 3:07-cv-01413-W-AJB, as referenced in the settlement agreement paragraphs 6, 10, 21 & 22 of the Class Action Settlement Agreement including but not limited to transcripts, formal and informal discovery responses, documents, other things and objections.

The following document requests also deal with NCO's knowledge of the TCPA, and how its

autodialer systems work:

Doc. Req. 13: All documents concerning any investigation, study or statistic of the cost, possibility or practicability of using, or not using: (a) automatic telephone dialing systems and/or (b) artificial or prerecorded voice during telephone calls.

Doc. Req. 14: All documents concerning any investigation, study or statistic of the cost, possibility or practicability of determining whether a telephone number was a cellular number or not.

Doc. Req. 15: All documents, contracts or agreements with third parties concerning telephoning debtors to collect debts.

Doc. Req. 16: All telephone bills for the past four years.

Doc. Req. 17: All documents, contracts or agreements concerning prerecorded or automatic messaging.

Doc. Req. 18: All documents concerning or relating to any effort, ever, by you or any affiliated company to determine a process, policy or practice whereby you could determine whether a telephone number is or was a cellular telephone number before calling that number.

Doc. Req. 19; All manuals and other documentation for telephony hardware, software and other equipment.

Doc. Req. 20: All contracts, agreements and communications with third parties concerning telephony.

Doc. Req. 30; All statistics, studies, white papers and/or reports of any kind concerning the use of telephony and/or the use of automatic telephone dialing systems or an artificial or prerecorded voice to collect debts.

Again, these materials are discoverable because the way the Automatic Dialer works is directly at issue in this case. The statistics information is discoverable because it may lead to admissible evidence concerning the nature and efficacy of the predictive dialer system. Further, plaintiff expects NCO to argue that its violations had a "small impact" upon society at large. Information responsive to this request would rebut such. Further, it is information that would be generated by the very illegal system that is at issue in this case.

Some other requests related to the autodialer and/or prerecorded messaging that were not fully responded to are:

Doc. Req. 3: All prerecorded messages used by NCO between April 14, 2005 and April 14, 2009.

This request is self-explanatory. Plaintiff wants scripts and the actual recordings of the prerecorded messages NCO left for debtors. Plaintiff is willing to narrow this request to August 2008 to April 14, 2009.

Int. 1: State the name, employer, most current home address, title and job description of each person (including present or former third parties, officers and/or employees) who is responsible for your telephony systems and operations.

NCO provided the name and office address of one employee, and argues that the emplyoee's home address and other information is confidential. It also states in its response that the third parties with which it deals are "confidential." There is nothing confidential or private about the

11

employees and third parties that deal with NCO's telephony systems. No third parties have been provided, and it seems inconceivable that there is merely one person at NCO that is responsible for the telephone systems and operations. Further, the response seems suspect in the sense that it implies that NCO does not even know if Mr. Stevens works there anymore.

> Int. 4: Identify all telephone numbers from which you made calls using an automatic telephone dialing system, and/or using an artificial or pre-recorded voice. Include the number itself, the dates the number was used with such equipment, the specific equipment used to make such calls, and what recording was used as part of the "artificial or pre-recorded voice", if any.

Plaintiff requested this information because typically autodialers make telephone calls from distinct telephone numbers. As <u>Exhibit 4</u> reveals, for the first time, NCO uses ten different autodialers. This information is directly related to the instrumentality of the violation, and plaintiff moves to compel.

These materials are relevant to the subject matter of the case, and should be produced. Plaintiff moves to compel.

## Part III - Other Items

**a. Information Regarding Plaintiff.**

Plaintiff issued document request 5 in order to learn about the relationship between NCO and the creditor for plaintiff's alleged debt.

> Doc. Req. 1: All documents relating to plaintiff, or which are indexed, filed or retrievable under plaintiff's names or any number, symbol, designation or code (such as an account number or Social Security number) assigned to plaintiff.

> Doc. Req. 2: All documents transmitted to plaintiff by defendant with respect to the alleged debt of plaintiff.

> Int. 2: If you contend that plaintiff provided consent to be called by you on his cellular telephone, identify the basis for such contention.

Plaintiff does not have the recordings or scripts of the automated messages NCO left for plaintiff, which are clearly responsive to document requests 1 and 2 (and 3 above. Further, according to NCO's motion to stay, it plans to argue that plaintiff consented to be called on his cell phone. Plaintiff is entitled to a full response to this interrogatory, and therefore moves to compel one. Alternatively, plaintiff requests that the Court bar NCO from attempting to introduce evidence that is not disclosed in NCO's response.

> Doc. Req. 5: All documents concerning Acute Care Specialists, Inc., including all communication between defendant and Acute Care Specialists, Inc.

> Doc. Req. 12: All contracts with creditors or other parties concerning the alleged debt of plaintiff.

No contract between NCO and Acute Care Specialists has been produced. Plaintiff believes that the contract likely states that the information provided to NCO as to the debtors' information was "without warranties of any kind." This would be relevant to whether NCO "reasonably relied" upon the creditor to provide non-cell numbers, as plaintiff expects NCO's summary judgment motion to assert.

**b.    FDCPA Damages Discovery.**

According to 15 U.S.C. §§ 1692k(b)(2), statutory damages in an FDCPA class action are $500,000, or 1% of the net worth of the defendant, whichever is smaller. The factfinder is to determine the appropriate amount of damages in a class action according to five criteria:

> [1] the frequency and persistence of noncompliance by the debt collector, [2] the nature of such noncompliance, [3] the resources of the debt collector, [4] the number of persons adversely affected, and [5] the extent to which the debt collector's noncompliance was intentional.

15 U.S.C. § 1692k(b)(2) (internal numbering added).  Dewey v. Associated Collectors, Inc., 927 F. Supp. 1172, 1175 (W.D.Wis. 1996).  Document requests 21 through 27 are aimed at gaining insight into factors number 1 and 5.

### c. FDCPA Bona Fide Error Defense

Under the FDCPA, 15 U.S.C. § 1692k(c), a defendant may choose to bring a defense to liability:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

"As the text of § 1692k(c) indicates, the procedures component of the bona fide error defense involves a two step inquiry: first, whether the debt collector 'maintained' i.e., actually employed or implemented procedures to avoid errors; and, second, whether the procedures were 'reasonably adapted' to avoid the specific error at issue." Johnson v. Riddle, 443 F.3d 723, 729 (10th Cir. 2006); Kort v. Diversified Collection Servs., 394 F.3d 530, 538 (7th Cir. 2005) (mentioning legal error in dicta).  NCO has asserted a "legal error" bona fide error defense in response to plaintiff's interrogatory 6 and in its answer to the complaint.  However, it has not provided any documents to support this contention in response to document request 31:

> Doc. Req. 31:  All documents relating to the maintenance by defendant of policies, practices or procedures adapted to avoid calling persons who did not consent, or revoked consent, to be called on their cellular telephones using an automatic telephone dialing system, using an artificial or pre-recorded voice.[4]

If a party asserts a defense that it made an error of law, then it must have consulted with attorneys.  And a party that uses consultation or advice of attorneys as part of its defense is not

---

[4] This request is also related to the TCPA claims, and therefore is therefore also included in Part I.

entitled to hide behind privilege when it is asked to produce those materials. "Where, as here, a party asserts as an essential element of his defense reliance upon the advice of counsel, we believe the party waives the attorney client privilege with respect to all communications, whether written or oral, to or from counsel concerning the transactions for which counsel's advice was sought." *Panter v. Marshall Field & Co.*, 80 F.R.D. 718, 721 (N.D. Ill. 1978); *Harter v. Unif. of Indianapolis*, 5 F. Supp. 2d 657 (S.D.Ind. 1998); *Hearn v. Rhay*, 68 F.R.D. 574 (E.D.Wash. 1975).

Further, no privilege log has been produced for any of the requests, which according to Fed.R.Civ.P. 26(b)(5), results in waiver of the privilege. Muro v. Target Corp., 243 F.R.D. 301 (N.D.Ill.); *United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473-74 (2d Cir. 1996); *Ner-Tamid Congregation of North Town v. Krivoruchko*, 2009 WL 152587, 08 C 1261 (N.D.Ill. Jan. 22, 2009); *Mosley v. City of Chicago*, 252 F.R.D. 445 (N.D.Ill. 2008). Plaintiff therefore moves to compel all materials, including those that might be otherwise have been privileged had defendant validly preserved such.

WHEREFORE, plaintiff respectfully requests that this Court compel The Bureaus to fully respond to the discovery requests set forth herein:

Part I - "Prior Express Consent": Int. 3, 4, 7, 8, 10 & Doc. Req. 10, 11, 31, 31, 33;
Part II - Information and Materials Concerning the Automatic Dialer and Knowledge:
Int. 1, 4, 5, 9, 11; Doc. Req. 3, 4, 6, 7, 8, 9, 13, 15, 16, 17, 18, 19, 20, 30;
Part III - Other Items: Info re plaintiff: doc 1, 2, Int 1; FDCPA Damages: Doc Req. 21-27;
FDCPA defense: Doc. Req. 31.

Respectfully submitted,

/s/ Alexander H. Burke

Alexander H. Burke

Burke Law Offices, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com
www.BurkeLawLLC.com

# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ALAN DONNELLY, on behalf of himself and others | ) | |
| similarly situated, | ) | 09 C 2264 |
| Plaintiff, | ) | |
| | ) | Judge Guzman |
| v. | ) | |
| | ) | |
| NCO FINANCIAL SYSTEMS, INC., | ) | JURY DEMANDED |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S FIRST DISCOVERY REQUESTS**

Plaintiff Alan Donnelly ("Plaintiff" or "Donnelly") hereby requests that defendant NCO

Financial Systems, Inc. ("NCO," "you" or "Defendant") respond to the following requests for

admissions, interrogatories, and document requests. Documents should be copied and sent to

plaintiff's counsel on the date the response is due.

Throughout this request:

1.      Unless otherwise specified in a particular paragraph, the time period covered by

this request is January 1, 2003 to the present.

2.      If you are declining to produce any document or respond to any paragraph in

whole or in part because of a claim of privilege, please: (a) identify the subject matter, type

(e.g., letter, memorandum), date, and author of the privileged communication or information,

all persons that prepared or sent it, and all recipients or addressees; (b) identify each person to

whom the contents of each such communication or item of information have heretofore been

disclosed, orally or in writing; (c) state what privilege is claimed; and (d) state the basis upon

which the privilege is claimed.

1

3.      If any document requested was, but no longer is, in your possession or subject to your control, please state: (a) the date of its disposition; (b) the manner of its disposition (e.g., lost, destroyed, transferred to a third party); and (c) an explanation of the circumstances surrounding the disposition of the document.

Other instructions and definitions to be used in making your response are attached hereto as Exhibit A.

If any paragraph of this request is believed to be ambiguous or unduly burdensome, please contact the undersigned and an effort will be made to remedy the problem.

**REQUESTS FOR ADMISSION**

1.      Defendant called plaintiff on April 1, 2009, using an automatic telephone dialing system.

2.      Defendant left a message for plaintiff on April 1, 2009, using an artificial voice.

3.       Defendant left a message for plaintiff on April 1, 2009, using a pre-recorded voice.

4.      Defendant called plaintiff on April 2, 2009, using an automatic telephone dialing system.

5.      Defendant left a message for plaintiff on April 2, 2009, using an artificial voice.

6.       Defendant left a message for plaintiff on April 2, 2009, using a pre-recorded voice.

7.      Defendant called plaintiff on April 6, 2009, using an automatic telephone dialing system.

8.      Defendant left a message for plaintiff on April 6, 2009, using an artificial voice.

2

9.      Defendant left a message for plaintiff on April 6, 2009, using a pre-recorded voice.

10.     Defendant called plaintiff on April 8, 2009, using an automatic telephone dialing system.

11.     Defendant left a message for plaintiff on April 8, 2009, using an artificial voice.

12.     Defendant left a message for plaintiff on April 8, 2009, using a pre-recorded voice.

13.     Defendant called plaintiff on April 11, 2009, using an automatic telephone dialing system.

14.     Defendant left a message for plaintiff on April 11, 2009, using an artificial voice.

15.     Defendant left a message for plaintiff on April 11, 2009, using a pre-recorded voice.

16.     Defendant called plaintiff on April 14, 2009, using an automatic telephone dialing system.

17.     Defendant left a message for plaintiff on April 14, 2009, using an artificial voice.

18.     Defendant left a message for plaintiff on April 14, 2009, using a pre-recorded voice.

19.     It is a practice of defendant to call debtors using an automatic telephone dialing system between August 19, 2008 and April 14, 2009.

20.     It was the practice of defendant to call debtors using an automatic telephone dialing system between August 19, 2008 and April 14, 2009.

3

21.     Defendant has never investigated the possibility of determining what telephone numbers are cellular numbers before calling.

22.     Plaintiff never consented to have you call his cellular telephone.

23.     Plaintiff never consented to have the creditor on whose behalf you called, call plaintiff's cell phone.

24.     The TCPA prohibits the making of telephone calls to cell phones using either auto-dialers, prerecorded messages or both.

25.     You entered into a class action settlement and injunction in the case *Bellows v. NCO*, case no. Case No. 3:07-cv-01413-W-AlB (S.D.Cal.).

26.     The settlement agreement asserts that all TCPA claims of everyone in the United States NCO called illegally, up to and including August 19, 2008, were released.

27.     NCO continued to call consumers' cellular phones after the Bellows settlement.

28.     Avoiding the violations alleged herein would have been possible for NCO.

29.     Avoiding the violations alleged herein would have been extremely expensive for NCO.

30.     NCO could have stopped using auto dialers but made a decision not to stop.

31.     NCO could have stopped using automated voice messages but made a decision not to stop.

32.     You did try to determine whether plaintiff's phone number was a cellular number at any time before this lawsuit was filed.

33.     You did try to determine whether plaintiff consented to receive telephone calls on his cellular telephone at any time before this lawsuit was filed.

4

34.     Plaintiff did not consent to receive calls to his cell phone by use of an automatic telephone dialing system from NCO concerning any account.

35.     Plaintiff did not consent to receive calls to his cell phone through use of an artificial voice from NCO concerning any account.

36.     Plaintiff did not consent to receive calls to his cell phone using a pre-recorded voice from NCO concerning any account.

37.     Defendant does not scrub the telephone numbers it calls to determine whether the number is a cellular phone number.

38.     Defendant has received advice that it would not be subject to TCPA liability if it stopped using artificial voice messages and automatic telephone dialing systems.

## INTERROGATORIES

1.      State the name, employer, most current home address, title and job description of each person (including present or former third parties, officers and/or employees) who is responsible for your telephony systems and operations.

2.      If you contend that plaintiff provided consent to be called by you on his cellular telephone, identify the basis for such contention.

3.      If you contend that any person responsive to interrogatories 7 and/or 8 consented to be called on their cellular telephone by you, identify the basis for such contention specifically for each person.

4.      Identify all telephone numbers from which you made calls using an automatic telephone dialing system, and\or using an artificial or pre-recorded voice.  Include the number itself, the dates the number was used with such equipment the specific equipment used to

make such calls, and what recording was used as part of the "artificial or pre-recorded voice", if any.

5.      Identify each complaint, lawsuit or formal or informal proceeding where defendant was accused of violation of the TCPA since January 1, 2004.

6.      Explain the basis for any claim that any violation identified in the complaint was unintentional and/or resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid such error.  Identify what procedures exist, how they are maintained, how they are adapted to avoid the matters complained of and why the alleged violations happened despite the procedures.

7.      State the number and identify each person with an address in Illinois, Indiana or Wisconsin, (a) to whom NCO either on its own or through an person authorized by NCO; (b) made a call to the person's cellular telephone; (c) through use of an automatic telephone dialing system, and\or using an artificial or pre-recorded voice; (d) where the recipient had not placed his/her cellular telephone number on an application with the creditor; (e) and the call was made at any time after August 19, 2008.

8.       Identify and provide the number for all persons you called where the caller identification was set to show the recipient the telephone number 866-473-9021 since August 19, 2008.  Include their telephone number, address, email, the date called and indicate whether an automatic telephone dialing system was used to make the call, and whether an artificial or pre-recorded voice.

9.      Identify all efforts you have ever made in order to attempt to comply with the TCPA, 47 U.S.C. §227, provisions restricting use of automatic telephone dialing systems and

6

using an artificial or pre-recorded voice, and the requirement that pre-recorded voice messages

include the name of the company calling, for calls to cellular phones. Be specific. Please

include all actions you have ever taken or considered and did not take. Include the dates,

persons involved in the decisionmaking process and why any specific action was taken or not

taken.

      10.     For any person identified in interrogatories 7 and 8, please provide any and all

evidence of express consent to receive telephone calls on a cellular telephone.

      11.     Provide the basis for any position that the *Bellows* case, settlement or stipulation

and order for injunction affects your liability or defenses in this case.

      12.     With respect to each expert, retained or nonretained, whom you will or may call

upon to give evidence or testimony in connection with this case, please state: (a) his name,

address, telephone number, occupation, and current employment; (b) the subject matter of his

expertise; (c) his educational background, academic degrees, employment history, employment

experience, and any other matters which you contend qualify him as an expert; (d) the

substance of all facts and opinions to which he could testify if called as a witness; (e) a summary

of the grounds for each such opinion.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

Please produce:

      1.     All documents relating to plaintiff, or which are indexed, filed or retrievable

under plaintiffs' names or any number, symbol, designation or code (such as an account

number or Social Security number) assigned to plaintiff.

2.　　All documents transmitted to plaintiff by defendant with respect to the alleged debt of plaintiff.

3.　　All prerecorded messages used by NCO between April 14, 2005 and April 14, 2009.

4.　　All documents related to *Bellows v. NCO,* case no. 3:07-cv-01413-W-AJB, including but not limited to transcripts, formal and informal discovery responses, documents, other things and objections.

5.　　All documents concerning Acute Care Specialists, Inc., including all communications between defendant and Acute Care Specialists, Inc.

6.　　All documents you have that mention compliance, or non-compliance, with the TCPA.

7.　　All documents, notes, presentations, powerpoint, and invoices regarding seminars, tele-seminars or manuals that mention the TCPA.

8.　　All communications that mention or concern compliance with the TCPA.

9.　　All documents and things related to "confirmatory discovery" in the *Bellows v. NCO,* case no. 3:07-cv-01413-W-AJB, as referenced in the settlement agreement paragraphs 6, 10, 21 & 22 of the Class Action Settlement Agreement including but not limited to transcripts, formal and informal discovery responses, documents, other things and objections.

10.　　For each person identified in response to interrogatories 7 & 8, please provide any and all documents or data that show the individual's consent to receive telephone calls on a cellular telephone using: (a) an automatic telephone dialing system; (b) an artificial voice; or (c) a pre-recorded voice.

8

11.      For each putative class member as the classes are defined in the Complaint, produce all documents that demonstrate that defendant had prior express consent to call that person's cellular telephone with respect to any particular debt.

12.      All contracts with creditors or other parties concerning the alleged debt of plaintiff.

13.      All documents concerning any investigation, study or statistic of the cost, possibility or practicability of using, or not using: (a) automatic telephone dialing systems and/or (b) artificial or prerecorded voice during telephone calls.

14.      All documents concerning any investigation, study or statistic of the cost, possibility or practicability of determining whether a telephone number was a cellular number or not.

15.      All documents, contracts or agreements with third parties concerning telephoning debtors to collect debts.

16.      All telephone bills for the past four years.

17.      All documents, contracts or agreements concerning prerecorded or automatic messaging.

18.      All documents concerning or relating to any effort, ever, by you or any affiliated company to determine a process, policy or practice whereby you could determine whether a telephone number is or was a cellular telephone number before calling that number.

19.      All manuals and other documentation for telephony hardware, software and other equipment.

9

20.     All contracts, agreements and communications with third parties concerning telephony.

21.     All manuals, memoranda, instructions and other documents which discuss, describe or set forth standards, criteria, guidelines, policies or practices pursuant to the Fair Debt Collection Practices Act or the Telephone Consumer Protection Act relating to making debt collection telephone calls.

22.     All manuals, memoranda, emails, data, instructions, and other documents setting forth defendant's policies, procedures or practices relating to the collection of debts by means of telephone calls, including but not limited to the use of automatic telephone dialing systems or an artificial or prerecorded voice.

23.     All documents relating to any judicial or administrative proceeding (irrespective of date) in which defendant was accused of violating the Fair Debt Collection Practices Act the Telephone Consumer Protection Act, any state statute regulating collection practices, or of committing a tort while engaging in collection activities, where the accusation concerns collection of debts by means of telephone calls, including but not limited to the use of automatic telephone dialing systems or an artificial or prerecorded voice.

24.     All documents relating to any complaint, criticism or inquiry, by any person, concerning defendant's compliance with the Fair Debt Collection Practices Act, or state statutes regulating debt collection activities, or collection practices generally.

25.     All documents (irrespective of date) relating to any claim made against defendant for violating the Fair Debt Collection Practices Act, the Telephone Consumer Protection Act, any state statute regulating collection practices, or of committing a tort while

engaging in collection activities debts by means of telephone calls, including but not limited to the use of automatic telephone dialing systems or an artificial or prerecorded voice.

26.     All documents (irrespective of date) which constitute or reflect communications between defendant and public or private agencies that receive consumer complaints (such as an Attorney General's office, the Federal Trade Commission, a Better Business Bureau or newspaper column), relating to collection of debts by means of telephone calls, including but not limited to the use of automatic telephone dialing systems or an artificial or prerecorded voice.

27.     All documents (irrespective of date) that discuss defendant's compliance or lack of compliance with the Fair Debt Collection Practices Act and/or the Telephone Consumer Protection Act.

28.     All organizational charts of defendant, including charts of employees, and charts of related companies.

29.     All insurance policies that could possibly afford coverage with respect to the matters complained of in this case together with all correspondence accepting or declining coverage or reserving rights with respect thereto.

30.     All statistics, studies, white papers and/or reports of any kind concerning the use of telephony and/or the use of automatic telephone dialing systems or an artificial or prerecorded voice to collect debts.

31.     All documents relating to the maintenance by defendant of policies, practices or procedures adapted to avoid calling persons who did not consent, or revoked consent, to be

called on their cellular telephones using an automatic telephone dialing system, using an artificial or pre-recorded voice.

32.     All documents, including all evidence of consent to receive automatic telephone dialing system, and\or using an artificial or pre-recorded voice calls on a cellular telephone, for each person with an address in Illinois, Indiana or Wisconsin, (a) to whom NCO either on its own or through an person authorized by NCO; (b) made a call to the person's cellular telephone; (c) through use of an automatic telephone dialing system, and\or using an artificial or pre-recorded voice; (d) where the recipient had not placed his/her cellular telephone number on an application with the creditor; (e) and the call was made at any time after August 19, 2008.

33.     All documents, including all evidence of consent to receive automatic telephone dialing system, and\or using an artificial or pre-recorded voice calls on a cellular telephone, for each person you called where the caller identification was set to show the recipient the telephone number 866-473-9021 since August 19, 2008.


                                                            /s/Alexander H. Burke

Burke Law Offices, LLC
155 N. Michigan Ave., Suite 732
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com

**Exhibit A**

**INSTRUCTIONS AND DEFINITIONS**

**Definitions**

A. The term "document" includes, by way of illustration only and not by way of limitation, the following, whether printed or reproduced by any process, or written and/or produced by hand: ledgers; notes; correspondence; communications of any nature; telegrams; memoranda; notebooks of any character; summaries or records of personal conversations; diaries; reports; publications; photographs; microfilm, microfiche, and similar media; minutes or records of meetings; transcripts of oral testimony or statements; reports and/or summaries of interviews; reports and/or summaries of investigations; court papers; brochures; pamphlets; press releases; drafts of, or revisions of drafts of, or transcriptions of, any document; tape recordings; dictation belts; invoices; bills; accounting records; telephone toll records; and disks, tapes, and other magnetic or electronic information storage media. Any document or reproduction of a document bearing on any sheet or side thereof any marks, including by way of illustration only and not by way of limitation initials, stamped indicia, any comment or any notation of any character and not a part of the original text, is to be considered a separate document.

B. References to "you" or any named entity or individual include agents, employees, and attorneys of that person, whether or not acting within the scope of their authority; all other persons acting on behalf of the person referred to; and in the case of an entity, its merged or acquired predecessors.

C. "Person" includes any individual, corporation, partnership, joint venture, firm, association, proprietorship, governmental agency, board, authority, or commission, or other entity.

D. "Identify" or "identification," when used with respect to a person, means to state the name, last known address, telephone number, and if a corporation or other entity, the principal place of business of the person.

E. "Identify" or "identification," when used with respect to a document, means to state the general nature' of the document (i.e., letter, memorandum, etc.); the name of the author or originator; each addressee; all individuals designated on the document to receive a copy or otherwise known to have received a copy; the date, title, and general subject matter of the document; the present custodian of each copy thereof and the last known address of each such custodian; and the date of the making of the document.

F. "Communication" includes every manner or means of disclosure, transfer, or exchange of information, and every disclosure, transfer or exchange of information, whether orally or by document or whether face-to-face, by telephone, mail, personal delivery, or otherwise.

G. "Identify" or "identification," when used with respect to a communication, means to state the date of the communication; the type of communication (i.e., telephone conversation, meeting, etc.); the place where the communication took place; the identification of the person who made the communication; the identification of each person who received the communication and of each person present when it was made; and the subject matter discussed.

H. "Relates" includes constitutes, describes, discusses, ref1ects, refers to, and logically pertains to.

**Instructions**

1. All documents within your possession, custody, or control or that of your agents, employees, and attorneys shall be produced. Without limitation of the term "control" as used in the preceding sentence, a document is deemed to be in your control if you have the right to secure the document or a copy thereof from another person having actual possession thereof.

2. To the extent any paragraph is objected to, please set forth all reasons for your objection.

3. If you prefer, you may provide legible copies of document that reflect all markings, notations, and highlighting on the originals.

4. Documents to be produced shall be either (1) organized as they are kept in the usual course of business or (2) organized and labeled to correspond with the paragraphs of the request for production.

5. The singular includes the plural number, and vice versa. The masculine includes the feminine and neuter genders. The past tense includes the present tense where the clear meaning is not distorted by change of tense.

6. To the extent that any document cannot be furnished, such documents as are available shall be supplied, together with a description of the documents not furnished and the reason for not furnishing them.

7. "And" and "or" shall be interpreted to mean "and/or," so that said terms are given their broadest possible meaning.

8. If you are producing a document, you need not provide the information specified in paragraph E with respect to that document.

**CERTIFICATE OF SERVICE**

I, Alexander H. Burke, certify that on May 12, 2009, I served this document via email delivery to:

David Israel     disrael@sessions-law.biz
James Kevin Schultz     jschultz@sessions-law.biz
Bryan Shartle bshartle@sessions-law.biz

<u>/s/Alexander H. Burke</u>

# Exhibit 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ALAN DONNELLY, on behalf of himself and others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Judge Guzman |
| -vs- | ) ) | Case No.:    09 C 2264 |
| NCO FINANCIAL SYSTEMS, INC., | ) ) | Magistrate Judge Nolan |
| Defendant. | ) | |

**NCO'S RESPONSES TO PLAINTIFF'S
FIRST DISCOVERY REQUESTS**

NOW COMES defendant NCO Financial Systems, Inc. ("NCO"), by and through undersigned counsel, and pursuant to Federal Rule of Civil Procedure 33, 34 and 36, hereby submits the following responses to Plaintiff's First Discovery Requests.

**REQUESTS FOR ADMISSION**

1.    Defendant called plaintiff on April 1, 2009, using an automatic telephone dialing system.

**Answer:    NCO admits calling plaintiff on April 1, 2009, but denies it called plaintiff using an "automatic telephone dialing system," as defined in 47 U.S.C. § 227.**

2.    Defendant left a message for plaintiff on April 1, 2009, using an artificial voice.

**Answer:** **NCO admits leaving a message for plaintiff on April 1, 2009, but denies it left a message for plaintiff using an "artificial voice" as defined in 47 U.S.C. § 227.**

3.     Defendant left a message for plaintiff on April 1, 2009, using a pre-recorded voice.

**Answer:** **NCO admits leaving a message for plaintiff on April 1, 2009, but denies it left a message for plaintiff using a "pre-recorded voice" as defined in 47 U.S.C. § 227.**

4.     Defendant called plaintiff on April 2, 2009, using an automatic telephone dialing system.

**Answer:** **NCO admits calling plaintiff on April 2, 2009, but denies it called plaintiff using an "automatic telephone dialing system," as defined in 47 U.S.C. § 227.**

5.     Defendant left a message for plaintiff on April 2, 2009, using an artificial voice.

**Answer:** **NCO admits leaving a message for plaintiff on April 2, 2009, but denies it left a message for plaintiff using an "artificial voice" as defined in 47 U.S.C. § 227.**

6.     Defendant left a message for plaintiff on April 2, 2009, using a pre-recorded voice.

**Answer:**      **NCO admits leaving a message for plaintiff on April 2, 2009, but denies it left a message for plaintiff using a "pre-recorded voice" as defined in 47 U.S.C. § 227.**

7.     Defendant called plaintiff on April 6, 2009, using an automatic telephone dialing system.

**Answer:**      **NCO admits calling plaintiff on April 6, 2009, but denies it called plaintiff using an "automatic telephone dialing system," as defined in 47 U.S.C. § 227.**

8.     Defendant left a message for plaintiff on April 6, 2009, using an artificial voice.

**Answer:**      **NCO admits leaving a message for plaintiff on April 6, 2009, but denies it left a message for plaintiff using an "artificial voice" as defined in 47 U.S.C. § 227.**

9.     Defendant left a message for plaintiff on April 6, 2009, using a pre-recorded voice.

**Answer:**      **NCO admits leaving a message for plaintiff on April 6, 2009, but denies it left a message for plaintiff using a "pre-recorded voice" as defined in 47 U.S.C. § 227.**

10.     Defendant called plaintiff on April 8, 2009, using an automatic telephone dialing system.

**Answer:** **NCO admits calling plaintiff on April 8, 2009, but denies it called plaintiff using an "automatic telephone dialing system," as defined in 47 U.S.C. § 227.**

11. Defendant left a message for plaintiff on April 8, 2009, using an artificial voice.

**Answer:** **NCO admits leaving a message for plaintiff on April 8, 2009, but denies it left a message for plaintiff using an "artificial voice" as defined in 47 U.S.C. § 227.**

12. Defendant left a message for plaintiff on April 8, 2009, using a pre-recorded voice.

**Answer:** **NCO admits leaving a message for plaintiff on April 8, 2009, but denies it left a message for plaintiff using a "pre-recorded voice" as defined in 47 U.S.C. § 227.**

13. Defendant called plaintiff on April 11, 2009, using an automatic telephone dialing system.

**Answer:** **NCO admits calling plaintiff on April 11, 2009, but denies it called plaintiff using an "automatic telephone dialing system," as defined in 47 U.S.C. § 227.**

14. Defendant left a message for plaintiff on April 11, 2009, using an artificial voice.

**Answer:** **NCO admits leaving a message for plaintiff on April 11, 2009, but denies it left a message for plaintiff using an "artificial voice" as defined in 47 U.S.C. § 227.**

15.  Defendant left a message for plaintiff on April 11, 2009, using a pre-recorded voice.

**Answer:** **NCO admits leaving a message for plaintiff on April 11, 2009, but denies it left a message for plaintiff using an "pre-recorded voice" as defined in 47 U.S.C. § 227.**

16.  Defendant called plaintiff on April 14, 2009, using an automatic telephone dialing system.

**Answer:** **NCO admits calling plaintiff on April 14, 2009, but denies it called plaintiff using an "automatic telephone dialing system," as defined in 47 U.S.C. § 227.**

17.  Defendant left a message for plaintiff on April 14, 2009, using an artificial voice.

**Answer:** **NCO admits leaving a message for plaintiff on April 14, 2009, but denies it left a message for plaintiff using an "artificial voice" as defined in 47 U.S.C. § 227.**

18.  Defendant left a message for plaintiff on April 14, 2009, using a pre-recorded voice.

**Answer:** **NCO admits leaving a message for plaintiff on April 14, 2009, but denies it left a message for plaintiff using an "pre-recorded voice" as defined in 47 U.S.C. § 227.**

19. It is a practice of defendant to call debtors using an automatic telephone dialing system between August 19, 2008 and April 14, 2009.

**Answer:** **Denied.**

20. It was the practice of defendant to call debtors using an automatic telephone dialing system between August 19, 2008 and April 14, 2009.

**Answer:** **Denied.**

21. Defendant has never investigated the possibility of determining what telephone numbers are cellular numbers before calling.

**Answer:** **Denied.**

22. Plaintiff never consented to have you call his cellular telephone.

**Answer:** **Denied.**

23. Plaintiff never consented to have the creditor on whose behalf you called, call plaintiff's cell phone.

**Answer:** **Denied.**

24. The TCPA prohibits the making of telephone calls to cell phones using either auto-dialers, prerecorded messages or both.

**Answer:** **Denied as an incomplete statement of the law.**

25. You entered into a class action settlement and injunction in the case *Bellows v. NCO*, case no. Case No. (*sic*) 3:07-cv-01413-W-AIB (S.D. Cal.).

**Answer:** **Admitted.**

26. The settlement agreement asserts that all TCPA claims of everyone in the United States NCO called illegally, up to an including August 19, 2008, were released.

**Answer:** **Denied as written.**

27. NCO continued to call consumers' cellular phones after the Bellows settlement.

**Answer:** **Denied as written.**

28. Avoiding the violations alleged herein would have been possible for NCO.

**Answer:** **Objection; this requests assumes that a violation as alleged occurred. NCO cannot reasonably be expected to admit or deny whether it could have avoided committing a violation that it denies occurred.**

29. Avoiding the violations alleged herein would have been extremely expensive for NCO.

**Answer:** **Objection; this requests assumes that a violation as alleged occurred. Objecting further, this request is vague, ambiguous and ill-defined. NCO cannot reasonably be expected to admit or deny whether it could have avoided committing a violation that it denies occurred, nor can NCO decipher what plaintiff means by "extremely expensive."**

30. NCO could have stopped using auto dialers but made a decision not to stop.

**Answer:** **Denied. NCO further denies it uses an "auto dialer" as defined in 47 U.S.C. § 227.**

31. NCO could have stopped using automated voice messages but made a decision not to stop.

**Answer:** **Denied. NCO further denies it uses "automated voice messages" as defined in 47 U.S.C. § 227.**

32. You did try to determine whether plaintiff's phone number was a cellular number at any time before this lawsuit was filed.

**Answer:** **Denied as written.**

33. You did try to determine whether plaintiff consented to receive telephone calls on his cellular telephone at any time before this lawsuit was filed.

**Answer:** **Admitted.**

34. Plaintiff did not consent to receive calls to his cell phone by use of an automatic telephone dialing system from NCO concerning any account.

**Answer:** **Denied.**

35. Plaintiff did not consent to receive calls to his cell phone through use of an artificial voice from NCO concerning any account.

**Answer:** **Denied.**

36. Plaintiff did not consent to receive calls to his cell phone using a pre-recorded voice from NCO concerning any account.

**Answer:** **Denied.**

37. Defendant does not scrub the telephone numbers it calls to determine whether the number is a cellular phone number.

**Answer:** **Denied.**

38.     Defendant has received advice that it would not be subject to TCPA liability if it stopped using artificial voice messages and automatic telephone dialing systems.

**Answer:     Objection; this requests seeks disclosure of information protected by the attorney client privilege and the attorney work product doctrine.**

## INTERROGATORIES

1.     State the name, employer, most current home address, title and job description of each person (including present or former third parties, officers and/or employees) who is responsible for your telephony systems and operations.

**Answer:     Objection; this interrogatory seeks confidential and private information of non-parties.  NCO will provide the last known home address in the event that the below individual is no longer employed with NCO.**

> **Greg Stevens**
> **NCO Financial Systems, Inc.**
> **Vice President Customer Contact Management**
> **9009 Corporate Lake Drive, Suite 300**
> **Tampa, Florida  33634**

2.     If you contend that plaintiff provided consent to be called by you on his cellular telephone, identify the basis for such contention.

**Answer:     Plaintiff provided the telephone number to NCO's client, Acute Care Specialists, Inc.  The number was placed with NCO by Acute Care Specialists,**

**Inc. as the home number. NCO reasonably relied on the accuracy of the information provided by Acute Care Specialists, Inc.**

3.     If you contend that any person responsive to interrogatories 7 and/or 8 consented to be called on their cellular telephone by you, identify the basis for such contention specifically for each person.

**Answer:     Unknown.   However, on information and belief, NCO reasonably believes that all consumers that were called by it on a cellular number had provided consent to receive such calls, either to NCO or a creditor.   See also NCO's answers to interrogatories 7 and 8.**

4.     Identify all telephone numbers from which you made calls using an automatic telephone dialing system, and/or using an artificial or pre-recorded voice. Include the number itself, the dates the number was used with such equipment, the specific equipment used to make such calls, and what recording was used as part of the "artificial or pre-recorded voice", if any.

**Answer:     Objection.  NCO does not use an "automatic telephone dialing system" with an "artificial or pre-recorded voice" as contemplated by the TCPA. NCO does use a predictive dialer.  See document produced as Bates No. NCO 0196.**

5.     Identify each complaint, lawsuit or formal or informal proceeding where defendant was accused of violation of the TCPA since January 1, 2004.

**Answer:** **Objection; said request is overly broad, unduly cumbersome, burdensome and oppressive, ill-defined, excessive in time and scope, and is neither relevant nor reasonably tailored to lead to the discovery of relevant and admissible information. Objecting further, evidence of other lawsuits and claims filed against NCO is inadmissible and not likely to lead to the discovery of admissible evidence under Rule 404 of the Federal Rules of Evidence when offered to demonstrate that prior lawsuits or claims against NCO are evidence of the validity of Plaintiff's current claims. Therefore, any lawsuits in the past cannot serve to buttress the merits of Plaintiff's case. The TCPA is a strict liability statute, with statutorily defined damages, so that evidence of prior complaints will also not affect plaintiff damages claim. Notwithstanding said objections, NCO has no meaningful ability to furnish the requested the information. To the extent Plaintiff seeks matters of public record, such information is equally accessible to Plaintiff and may be readily ascertained by review of respective court records.**

6.     Explain the basis for any claim that any violation identified in the complaint was unintentional and/or resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid such error. Identify what procedures exist, how they are maintained, how they are adapted to avoid the matters complained of and why the alleged violations happened despite the procedures.

**Answer:** **Pursuant to 15 U.S.C. § 1692k(c), to the extent that a violation is established, which is specifically denied, any such violation was not intentional and**

resulted from a bona fide error, notwithstanding the maintenance of procedures reasonably adapted to avoid such error. NCO monitors relevant legal decisions affecting the collection industry. NCO has concluded, through its practices and procedures, that the FDCPA does not restrict or prohibit telephone calls to cellular telephones or otherwise require it to obtain consent from the consumer before contacting a consumer on his cellular telephone. *See Ostrander v. Accelerated Receivables,* 2009 WL 909646 (W.D. N.Y. March 31, 2009) (the FDCPA does not prohibit the calling of a cellular telephone when the number was provided by another company and plaintiff gave no indication that he did not wish to be contacted on the cellular number provided). Alternatively, if the FDCPA does regulate the placing of telephone calls to cellular telephone numbers, NCO reasonably concluded that it had prior express consent from plaintiff to make such calls. NCO obtained the number being called, alleged to be plaintiff's cellular telephone number, from the original creditor, Acute Care Specialists, Inc., when the account was placed on January 27, 2009. Plaintiff did not inform NCO that he did not wish to be contacted on the telephone number provided. By providing the cellular number to Acute Care Specialists, plaintiff gave express consent to be contacted on his cellular telephone number. To the extent that a Court decides that plaintiff did not provide consent to the calls to the cellular telephone, any violation of the FDCPA was the result of a mistake of law related to the adequacy of the consent provided. *Nielsen v. Dickerson,* 307 F.3d 623, 640-41 (7th Cir. 2002);

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, **538 F.3d 469 (6th Cir. 2008).**

7.　　State the number and identify each person with an address in Illinois, Indiana or Wisconsin, (a) to whom NCO either on its own or through a person authorized by NCO; (b) made a call to the person's cellular telephone; (c) through use of an automatic telephone dialing system, and/or using an artificial or pre-recorded voice; (d) where the recipient had not placed his/her cellular telephone number on an application with the creditor; (e) and the call was made at any time after August 19, 2008.

**Answer:　　Objection. This request is unduly burdensome and cumbersome because NCO lacks the ability to respond to this inquiry without performing a manual review of every account in its system. NCO does not knowingly call consumers on cellular telephone numbers unless the consumer provided consent for the call. NCO also relies on the contact information provided to it by its clients. NCO does not maintain a searchable query field for cellular telephones, so NCO's account record system is unable to identify and distinguish cellular numbers that were being called. NCO also does not employ an "automatic telephone dialing system" or use an "artificial or pre-recorded voice" as defined in the TCPA. Finally, NCO does not have the ability to identify those accounts in which the consumer provided a cellular number on a credit application with a creditor as opposed to providing consent to be called at the number in some other manner. For example, in this case, plaintiff provided the cellular number on the intake sheet for**

**the medical provider. NCO relies on its clients to provide accurate and permissible contact information for consumers.**

8.      Identify and provide the number for all persons you called where the caller identification was set to show the recipient the telephone number 866-473-9021 since August 19, 2008. Include their telephone number, address, email, the date called and indicate whether an automatic telephone dialing system was used to make the call, and whether an artificial or pre-recorded voice.

**Answer:      Objection. This request is unduly burdensome and cumbersome. NCO does not use an automatic telephone dialing system or an artificial or prerecorded voice as defined by the TCPA. Objecting further, this interrogatory is not relevant or likely to lead to the discovery of relevant information. NCO lacks the ability to search its system and compile this list.**

9.      Identify all efforts you have ever made in order to attempt to comply with the TCPA, 47 U.S.C. § 227, provisions restricting use of an automatic telephone dialing systems and using an artificial or pre-recorded voice, and the requirement that pre-recorded voice messages include the name of the company calling, for calls to cellular phones. Be specific. Please include all actions you have taken or considered and did not take. Include the dates, persons involved in the decision making process and why any specific action was taken and not taken.

**Answer:** **Objection. This interrogatory seeks information that is protected by the attorney-client privilege and the attorney work product doctrine. This interrogatory is also overly broad, unduly burdensome and calls for a narrative response. NCO is a large company and cannot reasonably be expected to be able to identify and summarize with specificity all actions that were contemplated and taken in relation to attempts to comply with the TCPA. Subject to and without waiving this objection, NCO does not use an automatic telephone dialing system or use an artificial or pre-recorded voice as defined by the TCPA, 47 U.S.C. § 227, and NCO does not knowingly contact consumers on their cellular telephone number without consent. NCO also does perform a scrub on telephone numbers to determine if the number being called is a cellular number in certain circumstances.**

10. For any person identified in interrogatories 7 and 8, please provide any and all evidence of express consent to receive telephone calls on a cellular telephone.

**Answer:** **Unknown at this time. See NCO's answers to interrogatories 7 and 8.**

11. Provide the basis for any position that the *Bellows* case, settlement or stipulation and order for injunction affects your liability or defenses in this case.

**Answer:** **None at this time; investigation continues.**

12.    With respect to each expert, retained or nonretained, whom you will or may call upon to give evidence or testimony in connection with this case, please state: (a) his name, address, telephone number, occupation, and current employment; (b) the subject matter of his expertise; (c) his educational background, academic degrees, employment history, employment experience, and any other matters which you contend qualify him as an expert; (d) the substance of all facts and opinions to which he could testify if called as a witness; (e) a summary of the grounds for each such opinion.

**Answer:    NCO has not decided whether it will retain and/or disclose an expert witness(es).  NCO will supplement this answer consistent with the applicable case management order.  Investigation continues.**

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.    All documents relating to plaintiff, or which are indexed, filed or retrievable under plaintiff's names or any number, symbol, designation or code (such as an account number or Social Security number) assigned to plaintiff.

**Response:    See NCO's account notes produced as Bates No. NCO 0001 – NCO 0006.**

2.    All documents transmitted to plaintiff by defendant with respect to the alleged debt of plaintiff.

**Response:    NCO does not maintain copies of correspondence. Produced as Bates No. NCO 0007 is a copy of the form letter sent to plaintiff.**

3.     All prerecorded messages used by NCO between April 14, 2005 and April 14, 2009.

**Response:   Objection; this interrogatory is overly broad, unduly cumbersome, not relevant or reasonably tailored to lead to the discovery of admissible information.  Plaintiff has not alleged that a pre-recorded message contained improper or unlawful content.  Plaintiff's allegations arise out of the leaving of any message, and not the content of that message.  NCO also cannot reasonably be expected to have copies of all messages that it used since April 14, 2005.  Subject to and without waiving this objection, NCO is currently attempting to locate the responsive scripts.  NCO will supplement this response.**

4.     All documents related to *Bellows v. NCO*, case no. 3:07-cv-01413-W-AJB, including but not limited to transcripts, formal and informal discovery responses, documents, others things and objections.

**Response:   Objection; this request seeks production of materials protected by the attorney client privilege and the attorney work product doctrine, and is also vague, ambiguous and unduly cumbersome.  Many of these documents are public records likely already in plaintiff's possession, or readily available to counsel.  Subject to and without waiving this objection, produced as Bates No. NCO 0008 – NCO 0012 are NCO's confirmatory discovery responses in *Bellows*.**

5.     All documents concerning Acute Care Specialists, Inc., including all communication between defendant and Acute Care Specialists, Inc.

**Response:     See documents procedures as Bates No. NCO 0013 – NCO 0018.**

6.     All documents you have than mention compliance, or non-compliance, with the TCPA.

**Response:     Objection.  This request is vague, ambiguous, unduly cumbersome and is excessive in time and scope.  NCO is a large company with many departments.  NCO cannot reasonably be expected to have indexed and have available to it all documents that mention compliance with the TCPA.  This request also seeks production of materials protected by the attorney client privilege and the attorney work product doctrine.  Subject to and without waiving this objection, NCO's training manual related to the methods to collect a debt are produced as Bates No. NCO 0019 – NCO 0107 and an NCO training memo dated August 8, 2007 regarding placing calls to cellular telephones is produced as Bates No. NCO 0108**

7.     All documents, notes, presentation, powerpoint, and invoices regarding seminars, tele-seminars or manuals that mention the TCPA.

**Response:     Objection.  This request is vague, ambiguous, unduly cumbersome and is excessive in time and scope.  NCO is a large company with many departments.  NCO cannot reasonably be expected to have available to it all documents from all employees that may have prepared or obtained notes,**

**presentations, seminar materials and manuals that mention compliance with the TCPA. This request also seeks production of materials protected by the attorney client privilege and the attorney work product doctrine. Subject to and without waiving this objection, see NCO's response to Request No. 6.**

8.    All communications that mention or concern compliance with the TCPA.

**Response:    Objection. This request is vague, ambiguous, unduly cumbersome and is excessive in time and scope. NCO is a large company with many departments. NCO cannot reasonably be expected to have indexed and have available to it all communications that mention compliance with the TCPA. This request also seeks production of materials protected by the attorney client privilege and the attorney work product doctrine. Subject to and without waiving this objection, see NCO's response to Request No. 6.**

9.    All documents and things related to "confirmatory discovery" in the *Bellows v. NCO*, case no. 3:07-cv-01413-W-AJB, as referenced in the settlement agreement paragraphs 6, 10, 21 & 22 of the Class Action Settlement Agreement including but not limited to transcripts, formal and informal discovery responses, documents, other things and objections.

**Response:    See response to Request No. 4.**

10. For each person identified in response to interrogatories 7 & 8, please provide any and all documents or data that show the individual's consent to receive telephone calls on a cellular telephone using: (a) an automatic telephone dialing system; (b) an artificial voice; or (c) a pre-recorded voice.

**Response:** **None at this time. See NCO's answers to interrogatory numbers 7 and 8.**

11. For each putative class member as the classes are defined in the Complaint, produce all documents that demonstrate that defendant had prior express consent to call that person's cellular telephone with respect to any particular debt.

**Response:** **None at this time. NCO cannot currently identify the class members as defined by plaintiff, so it is not possible for NCO to produce materials in which an unidentified consumer provided express consent to the calls.**

12. All contracts with creditors or other parties concerning the alleged debt of plaintiff.

**Response:** **NCO is investigating whether there is a written contract with Acute Care Specialists, Inc., and will provide a copy if located.**

13. All documents concerning any investigation, study or statistic of the cost, possibility or practicability of using, or not using: (a) automatic telephone dialing systems and/or (b) artificial or prerecorded voice during telephone calls.

**Response:** **Objection. NCO does not use an automatic telephone dialing system or an artificial or prerecorded voice during telephone calls. Because of this, the request is unduly cumbersome and burdensome. Objecting further, this request seeks production of materials that are protected by the attorney client privilege, the attorney work product doctrine, and contains sensitive, confidential and proprietary business information. Subject to and without waiving this objection, NCO's memorandum dated July 7, 2005 regarding use of the dialer is produced as Bates No. NCO 0109 – NCO 0110.**

14.     All documents concerning any investigation, study or statistic of the cost, possibility or practicability of determining whether a telephone number was a cellular number or not.

**Response:** **Objection. This request seeks production of materials that are protected by the attorney client privilege, the attorney work product doctrine, and contains sensitive, confidential and proprietary business information.**

15.     All documents, contracts or agreements with third parties concerning telephoning debtors to collect debts.

**Response:** **Objection; this interrogatory is vague and ambiguous. A large portion of NCO's business involves telephoning debtors in an attempt to collect debts. Therefore, any contract that NCO enters with a third party could "concern" calling consumers. NCO will supplement this response upon being advised as to the**

nature of the contract being sought. **Subject to and without waiving this objection, produced as Bates No. NCO 0111 – NCO 0120 is NCO's contract with LiveVox.**

16. All telephone bills for the past four years.

**Response: Objection; this request is unduly cumbersome and burdensome. NCO estimates that production of this list would entail millions of pages. Moreover, the request is not relevant or reasonably tailored to lead to the discovery of relevant information as plaintiff's proposed class period begins on August 18, 2008.**

17. All documents, contracts or agreements concerning prerecorded or automatic messaging.

**Response: Objection; this interrogatory is vague and ambiguous. To the extent that plaintiff seeks production of the service contract agreements with vendors that support NCO's use of a prerecorded message, NCO will comply.**

18. All documents concerning or relating to any effort, ever, by you or any affiliated company to determine a process, policy or practice whereby you could determine whether a telephone number is or was a cellular telephone number before calling that number.

**Response: Objection. This request seeks production of materials that contain confidential, sensitive and proprietary business information and is also protected by the attorney client privilege and the attorney work product doctrine.**

**Objecting further, this request is not relevant or reasonably tailored to lead to the discovery of relevant information. The TCPA and FDCPA are strict liability statutes; NCO's state of mind when making the allegedly unlawful calls is not relevant.**

19. All manuals and other documentation for telephony hardware, software and other equipment.

**Response:   Objection.  This interrogatory is overly broad in that plaintiff's allegations arise only out of NCO's use of a dialer for making telephone calls, and the manuals or other documentation for other telephony equipment is not relevant or reasonably tailored to relevant information.   Subject to and without waiving this objection, NCO will produce responsive documents in its possession.  Produced as Bates No. 196 is a summary of NCO's predictive dialer**

20. All contracts, agreements and communications with third parties concerning telephony.

**Response:   Objection.  This request is vague and ill-defined.  To the extent that this request seeks documents related to third party vendors of NCO's telephony system, see NCO's response to Request No. 19.**

21. All manuals, memoranda, instructions and other documents which discuss, describe or set forth standards, criteria, guidelines, policies or practices pursuant to the

Fair Debt Collection Practices Act or the Telephone Consumer Protection Act relating to making debt collection telephone calls.

**Response:    Objection.  This request seeks production of materials that contain sensitive, confidential and proprietary business information.  Objecting further, NCO is a large company that contain several departments.  It is not reasonable to assume that NCO could index and inventory all documents possibly responsive to this request.  Subject to and notwithstanding this objection, NCO has a training manual that provide guidance for its employees involved in making debt collection telephone calls.  See the training materials produced in response to Request No. 6.**

22.    All manuals, memoranda, emails, data, instructions, and other documents setting forth defendant's policies, procedures or practices relating to the collection of debts by means of telephone calls, including but not limited to the use of automatic telephone dialing systems or an artificial or prerecorded voice.

**Response:    See NCO's response to Request No. 6.**

23.    All documents relating to any judicial or administrative proceeding (irrespective of date) in which defendant was accused of violating the Fair Debt Collection Practices Act the Telephone Consumer Protection Act, any state statute regulating collection practices, or of committing a tort while engaging in collection activities, where the accusation concerns collection of debts by means of telephone calls,

including but not limited to the use of automatic telephone dialing systems or an artificial or prerecorded voice.

**Response:   Objection; said request is overly broad, unduly cumbersome, burdensome and oppressive, ill-defined, excessive in time and scope, and is neither relevant nor reasonably tailored to lead to the discovery of relevant and admissible information.   Objecting further, evidence of other complaints, lawsuits and proceedings filed against NCO is inadmissible and not likely to lead to the discovery of admissible evidence under Rule 404 of the Federal Rules of Evidence when offered to demonstrate that prior complaints, lawsuits and proceedings against NCO are evidence of the validity of Plaintiff's current claims.   Therefore, any complaints, lawsuits and proceedings in the past cannot serve to buttress the merits of Plaintiff's case.   Notwithstanding said objections, NCO has no meaningful ability to furnish the requested the information.   To the extent Plaintiff seeks matters of public record, such information is equally accessible to Plaintiff and may be readily ascertained by review of respective court records.**

24.     All documents relating to any complaint, criticism or inquiry, by any person, concerning defendant's compliance with the Fair Debt Collection Practices Act, or state statutes regulating debt collection activities, or collection practices generally.

**Response:   Objection; said request is overly broad, unduly cumbersome, burdensome and oppressive, ill-defined, excessive in time and scope, and is neither relevant nor reasonably tailored to lead to the discovery of relevant and admissible**

**information.  Objecting further, evidence of other complaints, criticisms or inquiries brought against NCO is inadmissible and not likely to lead to the discovery of admissible evidence under Rule 404 of the Federal Rules of Evidence when offered to demonstrate that prior complaints, criticisms or inquiries against NCO are evidence of the validity of Plaintiff's current claims.  Therefore, any complaints, criticisms or inquiries in the past cannot serve to buttress the merits of Plaintiff's case.  Notwithstanding said objections, NCO has no meaningful ability to furnish the requested the information.  To the extent Plaintiff seeks matters of public record, such information is equally accessible to Plaintiff and may be readily ascertained by review of respective court records.**

25.     All documents (irrespective of date) relating to any claim made against defendant for violating the Fair Debt Collection Practices Act, the Telephone Consumer Protection Act, any state statute regulating collection practices, or of committing a tort while engaging in collection activities debts by means of telephone calls, including but not limited to the use of automatic telephone dialing systems or an artificial or prerecorded voice.

**Response:   Objection; said request is overly broad, unduly cumbersome, burdensome and oppressive, ill-defined, excessive in time and scope, and is neither relevant nor reasonably tailored to lead to the discovery of relevant and admissible information.  This request also seeks production of documents that are privileged under the attorney client privilege and the attorney work product doctrine.**

**Objecting further, evidence of other claims against NCO is inadmissible and not likely to lead to the discovery of admissible evidence under Rule 404 of the Federal Rules of Evidence when offered to demonstrate that prior complaints, lawsuits and proceedings against NCO are evidence of the validity of Plaintiff's current claims. Therefore, any complaints, lawsuits and proceedings in the past cannot serve to buttress the merits of Plaintiff's case. Notwithstanding said objections, NCO has no meaningful ability to furnish the requested the information. To the extent Plaintiff seeks matters of public record, such information is equally accessible to Plaintiff and may be readily ascertained by review of respective court records.**

26.    All documents (irrespective of date) which constitute or reflect communications between defendant and public or private agencies that receive consumer complaints (such as an Attorney General's office, the Federal Trade Commission, a Better Business Bureau or newspaper column), relating to collection of debts by means of telephone calls, including but not limited to the use of automatic telephone dialing systems or an artificial or prerecorded voice.

**Response:    Objection; said request is overly broad, unduly cumbersome, burdensome and oppressive, ill-defined, excessive in time and scope, and is neither relevant nor reasonably tailored to lead to the discovery of relevant and admissible information. Objecting further, evidence of other consumer complaints brought against NCO is inadmissible and not likely to lead to the discovery of admissible evidence under Rule 404 of the Federal Rules of Evidence when offered to**

demonstrate that prior consumer complaints against NCO are evidence of the validity of Plaintiff's current claims. Therefore, any consumer complaints in the past cannot serve to buttress the merits of Plaintiff's case. Notwithstanding said objections, Oxford has no meaningful ability to furnish the requested the information. To the extent Plaintiff seeks matters of public record, such information is equally accessible to Plaintiff and may be readily ascertained by review of respective court records.

27.     All documents (irrespective of date) that discuss defendant's compliance or lack of compliance with the Fair Debt Collection Practices Act and/or the Telephone Consumer Protection Act.

**Response:    Objection; this request is vague and ambiguous, is excessive in time and scope and is overly broad. NCO is a large company with several departments. NCO cannot reasonably be expected to have inventories and indexed all documents possibly responsive to the broad request. Subject to and without waiving said objection, see NCO's training materials produced in response to Request No. 21 for information related to NCO's compliance efforts.**

28.     All organizational charts of defendant, including charts of employees, and charts of related companies.

**Response:    See attached produced as Bates No. NCO 0121.**

29.    All insurance policies that could possibly afford coverage with respect to the matters complained of in this case together with all correspondence accepting or declining coverage or reserving rights with respect thereto.

**Response:    See attached produced as Bates No. NCO 0122 – NCO 0195.**

30.    All statistics, studies, white papers and/or reports of any kind concerning the use of telephony and/or the use of automatic telephone dialing systems or an artificial or prerecorded voice to collect debts.

**Response:    Objection.  This request seeks information that contains confidential, sensitive and proprietary business information, is not relevant or reasonably tailored to lead to the discovery of relevant information and is overly burdensome and cumbersome as NCO is a large company that includes the placing of telephone calls to collect debts and it is not reasonable for NCO to be able to produce all documents responsive to this request.**

31.    All documents relating to the maintenance by defendant of policies, practices or procedures adapted to avoid calling persons who did not consent, or revoked consent, to be called on their cellular telephones using an automatic telephone dialing system, using an artificial or pre-recorded voice.

**Response:    Objection; this request is vague and ambiguous, is excessive in time and scope and is overly broad.  NCO is a large company with several departments.  NCO cannot reasonably be expected to have inventories and indexed**

**all documents possibly responsive to the broad request. Subject to and without waiving said objection, see NCO's training materials produced in response to Request No. 21 for information related to NCO's compliance efforts.**

32.     All documents, including all evidence of consent to receive automatic telephone dialing system, and/or using an artificial or pre-recorded voice calls on a cellular telephone, for each person with an address in Illinois, Indiana or Wisconsin, (a) to whom NCO either on its own or through an person authorized by NCO; (b) made a call to the person's cellular telephone; (c) through use of an automatic telephone dialing system, and/or using an artificial or pre-recorded voice; (d) where the recipient had not placed his/her cellular telephone number on an application with the creditor; (e) and the call was made at any time after August 19, 2008.

**Response:     NCO will respond to this request after a proper class is defined. This request is otherwise overly burdensome and cumbersome because NCO would need to do a manual review of each account to meaningfully respond. See also NCO's answer to interrogatory number 7.**

33.     All documents, including all evidence of consent to receive automatic telephone dialing system, and/or using an artificial or pre-recorded voice calls on a cellular telephone, for each person you called where the caller identification was set to show the recipient the telephone number 866-473-9021 since August 19, 2008.

**Response:     NCO will respond to this request after a proper class is defined. This request is otherwise overly burdensome and cumbersome because NCO would need to do a manual review of each account to meaningfully respond.  See also NCO's answer to interrogatory number 7.**

AS TO OBJECTIONS:

/s/ James K. Schultz_____
Attorney for Defendant NCO

David Israel
SESSIONS, FISHMAN, NATHAN & ISRAEL, L.L.P.
Lakeway Two, Suite 200
3850 North Causeway Boulevard
Metairie, LA 70002-7227
Telephone:  (504) 828-3700
Facsimile:   (504) 828-3737
E-Mail:      disrael@sessions-law.biz

James K. Schultz
SESSIONS, FISHMAN, NATHAN & ISRAEL OF ILLINOIS, LLC
55 West Monroe Street, Suite 1120
Chicago, IL  60603
Telephone:  (312) 578-0990
Facsimile:   (312) 578-0991
E-Mail:      jschultz@sessions-law.biz

Attorney for Defendant NCO Financial Systems, Inc.

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that a copy of the foregoing **NCO'S RESPONSE TO PLAINTIFF'S FIRST DISCOVERY REQUESTS** was served on the following attorney of record via electronic mail on this the 10th day of July, 2009.

> Alexander H. Burke
> BURKE LAW OFFICES, LLC
> 155 N. Michigan Ave., Suite 9020
> Chicago, IL 60601
> ABurke@BurkeLawLLC.com

> /s/ James K. Schultz
> Attorney for Defendant NCO

James K. Schultz
SESSIONS, FISHMAN, NATHAN & ISRAEL, LLP
55 W. Monroe St., Suite 1120
Chicago, Illinois 60603
Telephone: (312) 578-0990
Facsimile: (312) 578-0991
E-Mail: jschultz@sessions-law.biz

# Exhibit 3

**Alex Burke**

| | |
|---|---|
| **From:** | Alex Burke [ABurke@BurkeLawLLC.com] |
| **Sent:** | Friday, August 28, 2009 7:26 AM |
| **To:** | 'James K. Schultz'; 'Shartle, Bryan' |
| **Subject:** | NCO v. Donnelly discovery email |

Jim and Bryan,

This comes for purposes of Rule 37 and Local Rule 37.2.

I have reviewed NCO's discovery responses, and we have the same problems we always have: refusals to provide responses based upon defendant's position that there is no liability, and flat-out stonewall objections that obviously have been raised without even making a preliminary inquiry into what documents exist. I bring your attention to the ESI rules under the new Rule 26, which require an attorney to monitor discovery compliance and ensure that the client has both preserved potentially discoverable materials, and that the client has performed a reasonable search. See Fed.R.Civ.P. 26(b)(2); *Zubulake v. UBS Warburg* **LLC,** 229 F.R.D. 422 (S.D.N.Y. 2004). I note that no emails or privilege log have been produced at all, which leads me to believe that no search for electronic data has been done. *Qualcomm Inc. v. Broadcom Corp.*, 2008 WL 66932 (S.D.Cal. Jan 07, 2008), *vacated in irrelevant part*, 2008 WL 638108 (S.D.Cal. Mar 05, 2008). The result of this is likely waiver. *Ner-Tamid Congregation of North Town v. Krivoruchko*, 2009 WL 152587, 08 C 1261 (N.D.Ill. Jan. 22, 2009); *Mosley v. City of Chicago*, 252 F.R.D. 445 (N.D.Ill. 2008).

As I usually do in these cases, I have gone through the discovery requests one-by-one and in groups by subject, and explained why I think there are more documents, or what I anticipate is missing. If you'd like to I can expand on plaintiff's position.

Many of the requests were objected to because NCO argues that it did not use an "automatic telephone dialing system" and "artificial voice" and "prerecorded voice" and therefore cannot even respond to the request. We request that for the purposes of responding to discovery, the parties reach an agreement regarding these terms (even though the Mercury autodialer was held to violate the TCPA in *Hicks v. Client Services*, 2009 WL 2365637 (S.D.Fla. June 9, 2009). I think it would be fair to refer to the term "automatic telephone dialing system" for purposes of this discovery as being the system that NCO has in place that calls debtors without human interaction, which includes use of the Mercury Dialer. I do not think we need to expound on "artificial voice" or "pre-recorded voice", but we will not argue that NCO submits to liability by responding to the requests.

Please get beck to me by next Friday, September 4, 2009, to give me a date-certain when revised responses will be produced.

Alex

1. Defendant called plaintiff on April 1, 2009, using an automatic telephone dialing system.
Answer: NCO admits calling plaintiff on April 1, 2009, but denies it called plaintiff using an "automatic telephone dialing system," as defined in 47 U.S.C. § 227.
2. Defendant left a message for plaintiff on April 1, 2009, using an artificial voice.
Answer: NCO admits leaving a message for plaintiff on April 1, 2009, but denies it left a message for plaintiff using an "artificial voice" as defined in 47 U.S.C. § 227.
3. Defendant left a message for plaintiff on April 1, 2009, using a prerecorded voice.
Answer: NCO admits leaving a message for plaintiff on April 1, 2009, but denies it left a message for plaintiff using a "pre-recorded voice" as defined in 47 U.S.C. § 227.
4. Defendant called plaintiff on April 2, 2009, using an automatic telephone dialing system.
Answer: NCO admits calling plaintiff on April 2, 2009, but denies it called plaintiff using an "automatic telephone dialing system," as defined in 47 U.S.C. § 227.

5. Defendant left a message for plaintiff on April 2, 2009, using an artificial voice.

Answer: NCO admits leaving a message for plaintiff on April 2, 2009, but denies it left a message for plaintiff using an "artificial voice" as defined in 47 U.S.C. § 227.

6. Defendant left a message for plaintiff on April 2, 2009, using a prerecorded voice.

Answer: NCO admits leaving a message for plaintiff on April 2, 2009, but denies it left a message for plaintiff using a "pre-recorded voice" as defined in 47 U.S.C. § 227.

7. Defendant called plaintiff on April 6, 2009, using an automatic telephone dialing system.

Answer: NCO admits calling plaintiff on April 6, 2009, but denies it called plaintiff using an "automatic telephone dialing system," as defined in 47 U.S.C. § 227.

8. Defendant left a message for plaintiff on April 6, 2009, using an artificial voice.

Answer: NCO admits leaving a message for plaintiff on April 6, 2009, but denies it left a message for plaintiff using an "artificial voice" as defined in 47 U.S.C. § 227.

9. Defendant left a message for plaintiff on April 6, 2009, using a prerecorded voice.

Answer: NCO admits leaving a message for plaintiff on April 6, 2009, but denies it left a message for plaintiff using a "pre-recorded voice" as defined in 47 U.S.C. § 227.

10. Defendant called plaintiff on April 8, 2009, using an automatic telephone dialing system.

Answer: NCO admits calling plaintiff on April 8, 2009, but denies it called plaintiff using an "automatic telephone dialing system," as defined in 47 U.S.C. § 227.

11. Defendant left a message for plaintiff on April 8, 2009, using an artificial voice.

Answer: NCO admits leaving a message for plaintiff on April 8, 2009, but denies it left a message for plaintiff using an "artificial voice" as defined in 47 U.S.C. § 227.

12. Defendant left a message for plaintiff on April 8, 2009, using a prerecorded voice.

Answer: NCO admits leaving a message for plaintiff on April 8, 2009, but denies it left a message for plaintiff using a "pre-recorded voice" as defined in 47 U.S.C. § 227.

13. Defendant called plaintiff on April 11, 2009, using an automatic telephone dialing system.

Answer: NCO admits calling plaintiff on April 11, 2009, but denies it called plaintiff using an "automatic telephone dialing system," as defined in 47 U.S.C. § 227.

14. Defendant left a message for plaintiff on April 11, 2009, using an artificial voice.

Answer: NCO admits leaving a message for plaintiff on April 11, 2009, but denies it left a message for plaintiff using an "artificial voice" as defined in 47 U.S.C. § 227.

15. Defendant left a message for plaintiff on April 11, 2009, using a prerecorded voice.

Answer: NCO admits leaving a message for plaintiff on April 11, 2009, but denies it left a message for plaintiff using an "pre-recorded voice" as defined in 47 U.S.C. § 227.

16. Defendant called plaintiff on April 14, 2009, using an automatic telephone dialing system.

Answer: NCO admits calling plaintiff on April 14, 2009, but denies it called plaintiff using an "automatic telephone dialing system," as defined in 47 U.S.C. § 227.

17. Defendant left a message for plaintiff on April 14, 2009, using an artificial voice.

Answer: NCO admits leaving a message for plaintiff on April 14, 2009, but denies it left a message for plaintiff using an "artificial voice" as defined in 47 U.S.C. § 227.

18. Defendant left a message for plaintiff on April 14, 2009, using a prerecorded voice.

Answer: NCO admits leaving a message for plaintiff on April 14, 2009, but denies it left a message for plaintiff using an "pre-recorded voice" as defined in 47 U.S.C. § 227.

19. It is a practice of defendant to call debtors using an automatic telephone dialing system between August 19, 2008 and April 14, 2009.

Answer: Denied.

20. It was the practice of defendant to call debtors using an automatic telephone dialing system between August 19, 2008 and April 14, 2009.

Answer: Denied.

Each of these first twenty requests for admission were denied because NCO does not believe that its equipment falls within the statutory definitions in 47 U.S.C. 227. Can we agree to disagree as to liability, but have request for admission responses that admit that no human being is involved in dialing telephone numbers for NCO when its "dialing" machine

is involved, and that NCO also regularly leaves voice messages that have a prerecorded and/or automatic voice message?

30. NCO could have stopped using auto dialers but made a decision not to stop.
Answer: Denied. NCO further denies it uses an "auto dialer" as defined in 47 U.S.C. § 227.
31. NCO could have stopped using automated voice messages but made a decision not to stop.
Answer: Denied. NCO further denies it uses "automated voice messages" as defined in 47 U.S.C. § 227.

These, too, could be responded to in a more straightforward way. We know that NCO uses a mercury dialer, and have recordings of lots of prerecorded messages. Please respond to the requests for admission in a way that fairly responds to what we want to establish here: that NCO made a decision to continue using the Mercury Dialer and automatic voice messages even after the Bellows case.

32. You did try to determine whether plaintiff's phone number was a cellular number at any time before this lawsuit was filed.
Answer: Denied as written.

I don't understand "denied as written." Please clarify.

38. Defendant has received advice that it would not be subject to TCPA liability if it stopped using artificial voice messages and automatic telephone dialing systems.
Answer: Objection; this requests seeks disclosure of information protected by the attorney client privilege and the attorney work product doctrine.

**INTERROGATORIES**
1. State the name, employer, most current home address, title and job description of each person (including present or former third parties, officers and/or employees) who is responsible for your telephony systems and operations.
Answer: Objection; this interrogatory seeks confidential and private information of non-parties. NCO will provide the last known home address in the event that the below individual is no longer employed with NCO.
Greg Stevens
NCO Financial Systems, Inc.
Vice President Customer Contact Management
9009 Corporate Lake Drive, Suite 300
Tampa, Florida 33634

I suspect that there are more persons involved in telephony at NCO than one person. For example, we know that NCO

2. If you contend that plaintiff provided consent to be called by you on his cellular telephone, identify the basis for such contention.
Answer: Plaintiff provided the telephone number to NCO's client, Acute Care Specialists, Inc. The number was placed with NCO by Acute Care Specialists, Inc. as the home number. NCO reasonably relied on the accuracy of the information provided by Acute Care Specialists, Inc.

We are interested in knowing why NCO thinks plaintiff provided his cell phone number to Acute Care Specialists. No documents supporting this theory have been produced.

3. If you contend that any person responsive to interrogatories 7 and/or 8 consented to be called on their cellular telephone by you, identify the basis for such contention specifically for each person.
Answer: Unknown. However, on information and belief, NCO reasonably believes that all consumers that were called by it on a cellular number had provided consent to receive such calls, either to NCO or a creditor. See also NCO's answers to interrogatories 7 and 8.

7. State the number and identify each person with an address in Illinois, Indiana or Wisconsin, (a) to whom NCO either on its own or through a person authorized by NCO; (b) made a call to the person's cellular telephone; (c) through use of an automatic telephone dialing system, and/or using an artificial or pre-recorded voice; (d) where the recipient had not placed his/her cellular telephone number on an application with the creditor; (e) and the call was made at any time after August 19, 2008.

Answer: Objection. This request is unduly burdensome and cumbersome because NCO lacks the ability to respond to this inquiry without performing a manual review of every account in its system. NCO does not knowingly call consumers on cellular telephone numbers unless the consumer provided consent for the call. NCO also relies on the contact information provided to it by its clients. NCO does not maintain a searchable query field for cellular telephones, so NCO's account record system is unable to identify and distinguish cellular numbers that were being called. NCO also does not employ an "automatic telephone dialing system" or use an "artificial or pre-recorded voice" as defined in the TCPA. Finally, NCO does not have the ability to identify those accounts in which the consumer provided a cellular number on a credit application with a creditor as opposed to providing consent to be called at the number in some other manner. For example, in this case, plaintiff provided the cellular number on the intake sheet for the medical provider. NCO relies on its clients to provide accurate and permissible contact information for consumers.

8. Identify and provide the number for all persons you called where the caller identification was set to show the recipient the telephone number 866-473-9021 since August 19, 2008. Include their telephone number, address, email, the date called and indicate whether an automatic telephone dialing system was used to make the call, and whether an artificial or pre-recorded voice.

Answer: Objection. This request is unduly burdensome and cumbersome. NCO does not use an automatic telephone dialing system or an artificial or prerecorded voice as defined by the TCPA. Objecting further, this interrogatory is not relevant or likely to lead to the discovery of relevant information. NCO lacks the ability to search its system and compile this list.

10. For any person identified in interrogatories 7 and 8, please provide any and all evidence of express consent to receive telephone calls on a cellular telephone.

Answer: Unknown at this time. See NCO's answers to interrogatories 7 and 8.

Doc. Req. 10. For each person identified in response to interrogatories 7 & 8, please provide any and all documents or data that show the individual's consent to receive telephone calls on a cellular telephone using: (a) an automatic telephone dialing system; (b) an artificial voice; or (c) a pre-recorded voice.

Response: None at this time. See NCO's answers to interrogatory numbers 7 and 8.

Doc. Req. 11. For each putative class member as the classes are defined in the Complaint, produce all documents that demonstrate that defendant had prior express consent to call that person's cellular telephone with respect to any particular debt.

Response: None at this time. NCO cannot currently identify the class members as defined by plaintiff, so it is not possible for NCO to produce materials in which an unidentified consumer provided express consent to the calls.

We have been through this before. Please provide the number and the names and addresses for these persons. We will limit the request to Chicago area codes 312, 773, 603, 815, 847 for now, to make the request less burdensome on NCO. We also request a full response to the "consent" interrogatory number 3.

4. Identify all telephone numbers from which you made calls using an automatic telephone dialing system, and/or using an artificial or pre-recorded voice. Include the number itself, the dates the number was used with such equipment, the specific equipment used to make such calls, and what recording was used as part of the "artificial or pre-recorded voice", if any.

Answer: Objection. NCO does not use an "automatic telephone dialing system" with an "artificial or pre-recorded voice" as contemplated by the TCPA. NCO does use a predictive dialer. See document produced as Bates No. NCO 0196.

Please just respond to the interrogatory rather than argue that you didn't break the law.

5. Identify each complaint, lawsuit or formal or informal proceeding where defendant was accused of violation of the TCPA since January 1, 2004.
Answer: Objection; said request is overly broad, unduly cumbersome, burdensome and oppressive, ill-defined, excessive in time and scope, and is neither relevant nor reasonably tailored to lead to the discovery of relevant and admissible information. Objecting further, evidence of other lawsuits and claims filed against NCO is inadmissible and not likely to lead to the discovery of admissible evidence under Rule 404 of the Federal Rules of Evidence when offered to demonstrate that prior lawsuits or claims against NCO are evidence of the validity of Plaintiff's current claims. Therefore, any lawsuits in the past cannot serve to buttress the merits of Plaintiff's case. The TCPA is a strict liability statute, with statutorily defined damages, so that evidence of prior complaints will also not affect plaintiff damages claim. Notwithstanding said objections, NCO has no meaningful ability to furnish the requested information. To the extent Plaintiff seeks matters of public record, such information is equally accessible to Plaintiff and may be readily ascertained by review of respective court records.

Please provide the requested information. Plaintiff does not have equal access to these records. And the evidentiary standard argued in the objections isn't the correct standard; this request is reasonably calculated to lead to admissible evidence concerning the bona fide error defense and NCO's knowledge that it was breaking the law. I cannot see how this request is overly broad or oppressive. If you think it is, please provide an explanation of why.

9. Identify all efforts you have ever made in order to attempt to comply with the TCPA, 47 U.S.C. § 227, provisions restricting use of an automatic telephone dialing systems and using an artificial or pre-recorded voice, and the requirement that prerecorded voice messages include the name of the company calling, for calls to cellular phones. Be specific. Please include all actions you have taken or considered and did not take. Include the dates, persons involved in the decision making process and why any specific action was taken and not taken.
Answer: Objection. This interrogatory seeks information that is protected by the attorney-client privilege and the attorney work product doctrine. This interrogatory is also overly broad, unduly burdensome and calls for a narrative response. NCO is a large company and cannot reasonably be expected to be able to identify and summarize with specificity all actions that were contemplated and taken in relation to attempts to comply with the TCPA. Subject to and without waiving this objection, NCO does not use an automatic telephone dialing system or use an artificial or pre-recorded voice as defined by the TCPA, 47 U.S.C. § 227, and NCO does not knowingly contact consumers on their cellular telephone number without consent. NCO also does perform a scrub on telephone numbers to determine if the number being called is a cellular number in certain circumstances.

Please respond to the interrogatory without commentary on whether NCO's equipment is covered by the TCPA. Please also provide a detailed description of the scrubbing efforts that NCO does, including under what circumstances NCO does a "scrub."

REQUESTS FOR PRODUCTION OF DOCUMENTS
1. All documents relating to plaintiff, or which are indexed, filed or retrievable under plaintiff's names or any number, symbol, designation or code (such as an account number or Social Security number) assigned to plaintiff.
Response: See NCO's account notes produced as Bates No. NCO 0001 – NCO 0006.

The account notes don't show any sort of consent that I can see. Please produce everything you have that relates to plaintiff. Further, on NCO 1, there is a notation that the "TU score receited -- check 0 notes for credit bureau information" And then there is a notation "score 741" later on the page. If there was a credit bureau or report that was accessed, we want to see what it said. Further, what are the "o" notes, and why haven't they been produced.

2. All documents transmitted to plaintiff by defendant with respect to the alleged debt of plaintiff.

Response: NCO does not maintain copies of correspondence. Produced as Bates No. NCO 0007 is a copy of the form letter sent to plaintiff.

3. All prerecorded messages used by NCO between April 14, 2005 and April 14, 2009.
Response: Objection; this interrogatory is overly broad, unduly cumbersome, not relevant or reasonably tailored to lead to the discovery of admissible information. Plaintiff has not alleged that a pre-recorded message contained improper or unlawful content. Plaintiff's allegations arise out of the leaving of any message, and not the content of that message. NCO also cannot
reasonably be expected to have copies of all messages that it used since April 14, 2005. Subject to and without waiving this objection, NCO is currently attempting to locate the responsive scripts. NCO will supplement this response.

We have reasonably tailored this request. Please produce the scripts and the recorded messages themselves.

4. All documents related to Bellows v. NCO, case no. 3:07-cv-01413-W-AJB, including but not limited to transcripts, formal and informal discovery responses, documents, others things and objections.
Response: Objection; this request seeks production of materials protected by the attorney client privilege and the attorney work product doctrine, and is also vague, ambiguous and unduly cumbersome. Many of these documents are public records likely already in plaintiff's possession, or readily available to counsel. Subject to and without waiving this objection, produced as Bates No. NCO 0008 –
NCO 0012 are NCO's confirmatory discovery responses in Bellows.

9. All documents and things related to "confirmatory discovery" in the Bellows v. NCO, case no. 3:07-cv-01413-W-AJB, as referenced in the settlement agreement paragraphs 6, 10, 21 & 22 of the Class Action Settlement Agreement including but not limited to transcripts, formal and informal discovery responses, documents, other things and objections.
Response: See response to Request No. 4.

We received one set of discovery responses that look a lot like the ones at issue here. There have to be multiple communications between NCO or its attorneys and the plaintiff or plaintiff's attorney in the Bellows case. Indeed, the settlement depended upon "confirmatory discovery." Please produce all such communications and documents.

5. All documents concerning Acute Care Specialists, Inc., including all communication between defendant and Acute Care Specialists, Inc.
Response: See documents procedures as Bates No. NCO 0013 – NCO 0018.

Please confirm that these are the only documents that NCO has or knows to exist.

6. All documents you have than mention compliance, or non-compliance, with the TCPA.
Response: Objection. This request is vague, ambiguous, unduly cumbersome and is excessive in time and scope. NCO is a large company with many departments. NCO cannot reasonably be expected to have indexed and have available to it all documents that mention compliance with the TCPA. This request also seeks production of materials protected by the attorney client privilege and the attorney work product doctrine. Subject to and without waiving this objection, NCO's training manual related to the methods to collect a debt are produced as Bates No. NCO 0019 – NCO 0107 and an NCO training memo dated August 8, 2007 regarding placing calls to cellular telephones is produced as Bates No. NCO 0108

8. All communications that mention or concern compliance with the TCPA.
Response: Objection. This request is vague, ambiguous, unduly cumbersome and is excessive in time and scope. NCO is a large company with many departments. NCO cannot reasonably be expected to have indexed and have available to it all communications that mention compliance with the TCPA. This request also seeks production of materials protected by the attorney client privilege and the attorney work product doctrine. Subject to and without waiving this objection, see NCO's response to Request No. 6.

If this is all NCO has, fine. But we think there is more.

Please produce the copy of the memo at NCO 108 that each person that called plaintiff Donnelly signed. I am sure that there are multiple documents that have not been produced that are responsive to this request, including substantial documents concerning Bellows and other cases. How about documents that relate to the crafting of this memo itself? Please produce a privilege log for all materials that have been withheld based upon some privilege.

7. All documents, notes, presentation, powerpoint, and invoices regarding seminars, tele-seminars or manuals that mention the TCPA.
Response: Objection. This request is vague, ambiguous, unduly cumbersome and is excessive in time and scope. NCO is a large company with many departments. NCO cannot reasonably be expected to have available to it all documents from all employees that may have prepared or obtained notes, presentations, seminar materials and manuals that mention compliance with the TCPA. This request also seeks production of materials protected by the attorney client privilege and the attorney work product doctrine. Subject to and without waiving this objection, see NCO's response to Request No. 6.

Some materials that are responsive to this request have been produced, but not what we expected. We expected to see ACA International and other materials. Does NCO not have these?

12. All contracts with creditors or other parties concerning the alleged debt of plaintiff.
Response: NCO is investigating whether there is a written contract with Acute Care Specialists, Inc., and will provide a copy if located.

Please update regarding such investigation.

13. All documents concerning any investigation, study or statistic of the cost, possibility or practicability of using, or not using: (a) automatic telephone dialing systems and/or (b) artificial or prerecorded voice during telephone calls.
Response: Objection. NCO does not use an automatic telephone dialing system or an artificial or prerecorded voice during telephone calls. Because of this, the request is unduly cumbersome and burdensome. Objecting further, this request seeks production of materials that are protected by the attorney client privilege, the attorney work product doctrine, and contains sensitive, confidential and proprietary business information. Subject to and without waiving this objection, NCO's memorandum dated July 7, 2005 regarding use of the dialer is produced as Bates No. NCO 0109 – NCO 0110.

It seems likely that NCO has documents that are responsive to this request. What was the scope of the search that was completed? Has a search of NCO's computer servers been done?

14. All documents concerning any investigation, study or statistic of the cost, possibility or practicability of determining whether a telephone number was a cellular
number or not.
Response: Objection. This request seeks production of materials that are protected by the attorney client privilege, the attorney work product doctrine, and contains sensitive, confidential and proprietary business information.

What is confidential or sensitive about documents responsive to this request? We have a protective order, I believe. No privilege log has been produced; please produce one.

15. All documents, contracts or agreements with third parties concerning telephoning debtors to collect debts.
Response: Objection; this interrogatory is vague and ambiguous. A large portion of NCO's business involves telephoning debtors in an attempt to collect debts. Therefore, any contract that NCO enters with a third party could "concern" calling consumers. NCO will supplement this response upon being advised as to the nature of the contract being sought. Subject to and without waiving this objection, produced as Bates No. NCO 0111 – NCO 0120 is NCO's contract with LiveVox.

17. All documents, contracts or agreements concerning prerecorded or automatic messaging.

Response: Objection; this interrogatory is vague and ambiguous. To the extent that plaintiff seeks production of the service contract agreements with vendors that support NCO's use of a prerecorded message, NCO will comply.

We want documents and contracts regarding the mercury dialer and other "dialers" that NCO uses, as well as documents concerning any prerecorded or artificial voice messages. If NCO does not use "automatic" messaging, that is, messages that are created by a computer rather than a human being, then please say so.

16. All telephone bills for the past four years.
Response: Objection; this request is unduly cumbersome and burdensome. NCO estimates that production of this list would entail millions of pages. Moreover, the request is not relevant or reasonably tailored to lead to the discovery of relevant information as plaintiff's proposed class period begins on August 18, 2008.

I asked for all phone bills because of the problems we had in another case where the defendant claimed that it could not tell what numbers it called were cell phone numbers. I can work with you on this one. For example, we narrow the scope to the class period in this case, and to Illinois. I find it unlikely that NCO has these records in paper form. If they are in database or some electronic form, they are likely more accessible and should be produced.

18. All documents concerning or relating to any effort, ever, by you or any affiliated company to determine a process, policy or practice whereby you could determine whether a telephone number is or was a cellular telephone number before calling that number.
Response: Objection. This request seeks production of materials that contain confidential, sensitive and proprietary business information and is also protected by the attorney client privilege and the attorney work product doctrine. Objecting further, this request is not relevant or reasonably tailored to lead to the discovery of relevant information. The TCPA and FDCPA are strict liability
statutes; NCO's state of mind when making the allegedly unlawful calls is not relevant.

We want to figure out what cell phones were autodialed, and which ones weren't. NCO mentioned earlier that it scrubs for cell numbers under some circumstnaces. A response to this request would likely explain what kind of scrub is done, and under what circumstances. We don't care about NCO's state of mind, except as it pertains to damages under 15 U.S.C. 1692k, and its defenses.

19. All manuals and other documentation for telephony hardware, software and other equipment.
Response: Objection. This interrogatory is overly broad in that plaintiff's allegations arise only out of NCO's use of a dialer for making telephone calls, and the manuals or other documentation for other telephony equipment is not relevant or reasonably tailored to relevant information. Subject to and without waiving this objection, NCO will produce responsive documents in its possession. Produced as
Bates No. 196 is a summary of NCO's predictive dialer

20. All contracts, agreements and communications with third parties concerning telephony.
Response: Objection. This request is vague and ill-defined. To the extent that this request seeks documents related to third party vendors of NCO's telephony system, see NCO's response to Request No. 19.
21. All manuals, memoranda, instructions and other documents which discuss, describe or set forth standards, criteria, guidelines, policies or practices pursuant to the Fair Debt Collection Practices Act or the Telephone Consumer Protection Act relating to making debt collection telephone calls.
Response: Objection. This request seeks production of materials that contain sensitive, confidential and proprietary business information. Objecting further, NCO is a large company that contain several departments. It is not reasonable to assume that NCO could index and inventory all documents possibly responsive to this request. Subject to and notwithstanding this objection, NCO has a training manual that provide guidance for its employees involved in making debt collection telephone calls. See the training materials produced in response to Request No. 6.

22. All manuals, memoranda, emails, data, instructions, and other documents setting forth defendant's policies, procedures or practices relating to the collection of debts by means of telephone calls, including but not limited to the use of automatic telephone dialing systems or an artificial or prerecorded voice.
Response: See NCO's response to Request No. 6.

Are there no other manuals or contracts? Please produce all documents that are in NCO's custody and control, and then produce an affidavit that swears that everything has been produced.

23. All documents relating to any judicial or administrative proceeding (irrespective of date) in which defendant was accused of violating the Fair Debt Collection Practices Act the Telephone Consumer Protection Act, any state statute regulating collection practices, or of committing a tort while engaging in collection activities, where the accusation concerns collection of debts by means of telephone calls,
including but not limited to the use of automatic telephone dialing systems or an artificial or prerecorded voice.
Response: Objection; said request is overly broad, unduly cumbersome, burdensome and oppressive, ill-defined, excessive in time and scope, and is neither relevant nor reasonably tailored to lead to the discovery of relevant and admissible information. Objecting further, evidence of other complaints, lawsuits and proceedings filed against NCO is inadmissible and not likely to lead to the discovery
of admissible evidence under Rule 404 of the Federal Rules of Evidence when offered to demonstrate that prior complaints, lawsuits and proceedings against NCO are evidence of the validity of Plaintiff's current claims. Therefore, any complaints, lawsuits and proceedings in the past cannot serve to buttress the merits of Plaintiff's case. Notwithstanding said objections, NCO has no meaningful ability
to furnish the requested information. To the extent Plaintiff seeks matters of public record, such information is equally accessible to Plaintiff and may be readily ascertained by review of respective court records.

24. All documents relating to any complaint, criticism or inquiry, by any person, concerning defendant's compliance with the Fair Debt Collection Practices Act, or state statutes regulating debt collection activities, or collection practices generally.
Response: Objection; said request is overly broad, unduly cumbersome, burdensome and oppressive, ill-defined, excessive in time and scope, and is neither relevant nor reasonably tailored to lead to the discovery of relevant and admissible information. Objecting further, evidence of other complaints, criticisms or inquiries brought against NCO is inadmissible and not likely to lead to the discovery of admissible evidence under Rule 404 of the Federal Rules of Evidence when offered to demonstrate that prior complaints, criticisms or inquiries against NCO are evidence of the validity of Plaintiff's current claims. Therefore, any complaints, criticisms or inquiries in the past cannot serve to buttress the merits of Plaintiff's case. Notwithstanding said objections, NCO has no meaningful ability to furnish the requested the information. To the extent Plaintiff seeks matters of public record, such information is equally accessible to Plaintiff and may be readily ascertained by review of respective court records.

25. All documents (irrespective of date) relating to any claim made against defendant for violating the Fair Debt Collection Practices Act, the Telephone Consumer Protection Act, any state statute regulating collection practices, or of committing a tort while engaging in collection activities debts by means of telephone calls, including but not limited to the use of automatic telephone dialing systems or an artificial or prerecorded voice.
Response: Objection; said request is overly broad, unduly cumbersome, burdensome and oppressive, ill-defined, excessive in time and scope, and is neither relevant nor reasonably tailored to lead to the discovery of relevant and admissible information. This request also seeks production of documents that are privileged under the attorney client privilege and the attorney work product doctrine. Objecting further, evidence of other complaints against NCO is inadmissible and not likely to lead to the discovery of admissible evidence under Rule 404 of the Federal Rules of Evidence when offered to demonstrate that prior complaints, lawsuits and proceedings against NCO are evidence of the validity of Plaintiff's current claims. Therefore, any complaints, lawsuits and proceedings in the past cannot serve to buttress the merits of Plaintiff's case. Notwithstanding said objections, NCO has no meaningful ability to furnish the requested information. To the extent Plaintiff seeks matters of public record, such information is equally accessible to Plaintiff and may be readily ascertained by review of respective court records.

26. All documents (irrespective of date) which constitute or reflect communications between defendant and public or private agencies that receive consumer complaints (such as an Attorney General's office, the Federal Trade Commission, a Better Business Bureau or newspaper column), relating to collection of debts by means of telephone calls, including but not limited to the use of automatic telephone dialing
systems or an artificial or prerecorded voice.
Response: Objection; said request is overly broad, unduly cumbersome, burdensome and oppressive, ill-defined, excessive in time and scope, and is neither relevant nor reasonably tailored to lead to the discovery of relevant and admissible information. Objecting further, evidence of other consumer complaints brought against NCO is inadmissible and not likely to lead to the discovery of admissible
evidence under Rule 404 of the Federal Rules of Evidence when offered to demonstrate that prior consumer complaints against NCO are evidence of the validity of Plaintiff's current claims. Therefore, any consumer complaints in the past cannot serve to buttress the merits of Plaintiff's case. Notwithstanding said objections, Oxford has no meaningful ability to furnish the requested the information. To the extent Plaintiff seeks matters of public record, such information is equally accessible to Plaintiff and may be readily ascertained by review of respective court records.

27. All documents (irrespective of date) that discuss defendant's compliance or lack of compliance with the Fair Debt Collection Practices Act and/or the Telephone
Consumer Protection Act.
Response: Objection; this request is vague and ambiguous, is excessive in time and scope and is overly broad. NCO is a large company with several departments. NCO cannot reasonably be expected to have inventories and indexed all documents possibly responsive to the broad request. Subject to and without waiving said objection, see NCO's training materials produced in response to Request No. 21 for information related to NCO's compliance efforts.

We are willing at this point to limit requests 23-27 to the initiating complaint regarding TCPA violations.

28. All organizational charts of defendant, including charts of employees, and charts of related companies.
Response: See attached produced as Bates No. NCO 0121.

I cannot read document 121. Can you please produce a legible copy?

30. All statistics, studies, white papers and/or reports of any kind concerning the use of telephony and/or the use of automatic telephone dialing systems or an artificial
or prerecorded voice to collect debts.
Response: Objection. This request seeks information that contains confidential, sensitive and proprietary business information, is not relevant or reasonably tailored to lead to the discovery of relevant information and is overly burdensome and cumbersome as NCO is a large company that includes the placing of telephone calls to collect debts and it is not reasonable for NCO to be able to produce all documents responsive to this request.

We limit this request to automatic telephone dialing systems and/or artificial or prerecorded voice messages. We think, at the very least, an electronic search must be done to find responsive documents. Has this been done?

31. All documents relating to the maintenance by defendant of policies, practices or procedures adapted to avoid calling persons who did not consent, or revoked consent, to be called on their cellular telephones using an automatic telephone dialing system, using an artificial or pre-recorded voice.
Response: Objection; this request is vague and ambiguous, is excessive in time and scope and is overly broad. NCO is a large company with several departments. NCO cannot reasonably be expected to have inventories and indexed all documents possibly responsive to the broad request. Subject to and without waiving said objection, see NCO's training materials produced in response to
Request No. 21 for information related to NCO's compliance efforts.

32. All documents, including all evidence of consent to receive automatic telephone dialing system, and/or using an artificial or pre-recorded voice calls on a cellular telephone, for each person with an address in Illinois, Indiana or

Wisconsin, (a) to whom NCO either on its own or through an person authorized by NCO; (b) made a call to the person's cellular telephone; (c) through use of an automatic telephone dialing system, and/or using an artificial or pre-recorded voice; (d) where the recipient had not placed his/her cellular telephone number on an application with the creditor; (e) and the

call was made at any time after August 19, 2008.

Response: NCO will respond to this request after a proper class is defined. This request is otherwise overly burdensome and cumbersome because NCO would need to do a manual review of each account to meaningfully respond. See also NCO's answer to interrogatory number 7.


33. All documents, including all evidence of consent to receive automatic telephone dialing system, and/or using an artificial or pre-recorded voice calls on a cellular telephone, for each person you called where the caller identification was set to show the recipient the telephone number 866-473-9021 since August 19, 2008.

Response: NCO will respond to this request after a proper class is defined. This request is otherwise overly burdensome and cumbersome because NCO would need to do a manual review of each account to meaningfully respond. See also NCO's answer to interrogatory number 7.


Again, these are consent issues.  We need to know what the defense is so that we can prepare our case.  Please produce the documents, or tell us that you do not plan to try.  We intend to ask for an order limiting NCO from submitting evidence regarding this issue if we do not receive documents in a timely manner.


Alex


Burke Law Offices, LLC

155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com
www.BurkeLawLLC.com

The information transmitted through this communication is intended only for the addressee and may contain confidential and/or privileged material. Any unauthorized interception, review, retransmission, dissemination, or other use of, or taking of any action upon this information by persons or entities other than the intended recipient is prohibited and may subject the unauthorized person or entity to criminal or civil liability. If you received this communication in error, please contact us immediately at (312) 729-5288, and delete the communication from any computer or network system.  This message is not intended to create an attorney-client relationship.  Unless you have entered into a written, signed document entitled "Authorization" with Burke Law Offices, LLC, the firm does not represent you.

# Exhibit 4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ALAN DONNELLY, on behalf of himself and others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Judge Guzman |
| -vs- | ) ) | Case No.:    09 C 2264 |
| NCO FINANCIAL SYSTEMS, INC., | ) ) | Magistrate Judge Nolan |
| Defendant. | ) ) | |

## AFFIDAVIT OF GREG STEVENS

NOW COMES the affiant, Greg Stevens, being first duly sworn upon oath under the penalty of perjury under the laws of the State of Florida, and testifies that the following is true and correct to the best of his knowledge and belief:

1.    I am the Vice President for Customer Contact Management for NCO Financial Systems, Inc. ("NCO"). I am competent and authorized to testify to the matters set forth herein.

2.    I have reviewed the complaint filed by the plaintiff, Alan Donnelly, in the above-referenced matter.

3.    NCO does _**not**_ knowingly call consumers on cellular telephones, unless the consumer has provided consent for the call to either NCO or the creditor.

4.    In this case, the telephone number that NCO called to reach plaintiff was the number provided to NCO by the original creditor, Acute Care Specialists, Inc. When

- 1 -

a number is placed with NCO by a creditor, NCO reasonably relies on the information from the creditor that the consumer has authorized calls to that number.

5.　In plaintiff's revised discovery requests, plaintiff seeks the name, telephone number and address for all persons in area codes (312), (773), (630), (815) and (847) "(a) to whom NCO either on its own or through a person authorized by NCO; (b) made a call to the person's cellular telephone; (c) through use of an automatic telephone dialing system, and/or using an artificial or pre-recorded voice; (d) where the recipient had not placed his/her cellular telephone number on an application with the creditor; (e) and the call was made at any time after August 19, 2008."

6.　NCO does **_not_** have the information plaintiff has requested.　Nor is the information readily available to NCO.　In order to provide the requested information, NCO would need to create programs specific to plaintiff's request and build unique databases.　The compilation and production of the requested list would require extensive research, review, and evaluation and would require several hundred man hours to complete.

7.　To provide the requested data, NCO would be required to first pull the call records for each of the 33 dialers that operate within NCO's CRS system.　Each dialer makes approximately 300,000 to 400,000 calls per month.　There have been approximately 128 million calls made through NCO's CRS system since August 2008. That total would include *all calls* made, including landline and cell calls.　From that pool, NCO would then need to filter the 128 million calls to determine which were made to the requested area codes.　This would require building multiple files, probably 500 or more

- 2 -

based on size limitations. The files would then need to be merged and filtered for duplicate phone numbers.

8.      After limiting the list geographically, NCO would then need to upload the numbers into a program to identify which of the numbers are ***currently*** cellular numbers. The query would ***not*** be able to identify whether any number was ported within the class defined period (since August 19, 2008) from a landline to a cellular line. Again, the query would only identify the ***current*** status of the phone number, ***not*** the status of the phone number ***at the time NCO called***.

9.      Assuming then that NCO can relate the numbers that have been called and identified as cell numbers (at the time the query was completed) to NCO accounts, and assuming that NCO, after identifying the related NCO accounts, can determine whether any dialer calls were made on the NCO accounts, it will be impossible to determine which NCO accounts relate to persons who have ***not*** placed the called cellular number "on an application with the creditor" absent an individual review of each related NCO account. In other words, a manual review would need to be completed for each related NCO account, involving review of all supporting documentation in NCO's system and in the creditor's possession.

10.     To illustrate the scope of the data that must be analyzed to attempt to provide the requested information, if NCO were to produce paper copies of the related documents, I estimate the stack would be at least as high as a 10-story building.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

_____
Greg Stevens

STATE OF _FLORIDA_ )
                      ) ss.
COUNTY OF _Hillsborough_ )

       I certify that I know or have satisfactory evidence that Greg Stevens is the individual who personally appeared before me, and said individual acknowledged that he signed this instrument as his free and voluntary act for the uses and purposes mentioned in the instrument.

Dated: _9/25/09_

_____

Print Name: _PaRIS DavIS_
                NOTARY PUBLIC

PARIS L. DAVIS, JR.
Comm# DD0777386
Expires 4/9/2012
Florida Notary Assn., Inc

N:\NCO\Donnelly, Alan (CLASS) (6947-09-24283)\Discovery\Final Draft Stevens Affidavit.09.24.09.doc

- 4 -