**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ALAN DONNELLY, on behalf of himself and | ) | |
| others similarly situated, | ) | 09 C 2264 |
|     Plaintiff, | ) | |
| | ) | Judge Guzman |
|       v. | ) | Magistrate Judge Nolan |
| | ) | |
| NCO FINANCIAL SYSTEMS, INC., | ) | JURY DEMANDED |
|     Defendant. | ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO COMPEL[1]**

The controlling January 4, 2008, FCC Order, Mtn at Appx A ¶ 10,  holds that, if sued, a TCPA defendant has the burden of proof to show that it had "prior express consent" to make autodialed calls and/or leave prerecorded messages to cell phones:

> Should a question arise as to whether express consent was provided, the burden will be on the creditor to show it obtained the necessary prior express consent. Similarly, a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules. Calls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call.[38]
> ***
> [fn38] A third party collector may also be liable for a violation of the Commission's rules.

If the defense is available to NCO, it has the burden of proof to show which, if any, of the class members provided "prior express consent" to receive such calls.   The burden of proof is "preponderance of the evidence."  *New Jersey v. New York*, 523 U.S. 767, 786-87 (1998).

A plaintiff facing an affirmative defense is entitled to discovery on the defense -- even in a class action setting.   Fed.R.Civ.P. 26(b)(1); see also *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352-53, n.13 (1978).

---

[1] The parties are currently only briefing "Part I" of plaintiff's motion to compel.  The parties have agreed to work harder to resolve their differences as to Parts II and III, which have been entered and continued.

This is particularly true here where the defendant argues that its having *asserted* the defense bars certification completely. NCO wants all of the cake, and to eat it too. It wants to raise the specter of the "prior express consent" defense as a bar to class certification without providing evidence of such in discovery.[2] Plaintiff requests that this Court compel NCO to identify all documents that relate to its consent defense, and produce all materials it can relating to the consent defense by date-certain, and bar NCO from introducing anything not produced and specifically identified, pursuant to Interrogatories 3, 4, 7, 8 & 10, and document requests 10, 11, 31, 31 & 33.

NCO argues that plaintiff is not entitled to evidence concerning its affirmative defense because it believes that the prior express consent issue operates as a complete bar to certification "as a matter of law." The merits of class certification were not part of the referral order, and are <u>not</u> before this Court. Furthermore, although NCO promised to file a "preemptive" motion for summary judgment on the issue of whether class certification for these claims is improper as a matter of law [see NCO's Motion to Stay Class Discovery; docket item 21 at 2], it has apparently decided not to do so after speaking with Judge Guzman. <u>Exhibit 5</u> (transcript of proceedings from presentation of NCO's motion to stay; see also page 10, where Judge Guzman originally granted this motion, but permitted NCO a reprieve to try to work it out face-to-face. NCO would not budge on the consent prior express consent issue).

---

[2] NCO knows that it has been violating the TCPA for years. It was sued in 2008 for this exact conduct, and entered into a "sweetheart" settlement for $950,000 with class action lawyers in California with notice published twice in USA Today, releasing TCPA claims for an approximate 512,000,000 calls, based upon the estimate in the Stevens Affidavit NCO attaches. But that is not all. The bottom line was much cheaper: NCO ultimately paid $300,000 in attorney's fees, $197,970 in *cy pres* and a total of $2,030 to 29 claimants who timely returned claim forms. The rest of the $950,000 reverted to NCO. In another part of the settlement, NCO also agreed to a consent decree that permitted it to continue illegally calling consumers using an autodialer and prerecorded messages. Any reasonably cautious company would have taken measures to ensure that it could prove its defense for each and every person it called after having been sued for this kind of violation.

NCO's burdensome objection to providing evidence of its defense is unsupportable: NCO put these materials at issue, not plaintiff. The discovery will be withdrawn if NCO withdraws the defense completely.[3]

"Completely" is the operative term here. On page 4-5 NCO asserts that it is "not asserting a defense that individual class members provided 'prior express consent.'" This is a distinction without a difference: the brief also makes clear that NCO plans to argue that certification is improper because the statute requires "mini-trials" on the very defense upon which plaintiff seeks discovery. Plaintiff will agree to withdraw the discovery if NCO formally takes the "prior express consent" defense out of issue in this litigation through court-signed stipulation.[4]

*Ocean Atlantic Woodland Corp. v. DRH Cambridge Homes, Inc.*, 262 F.Supp.2d 923 (N.D.Ill. 2003) (Guzman, J.) was critical of certain discovery requests because they had nothing to do with the "claims or defenses [or] damages" in the case. In contrast, the plaintiff in this case has merely asked for information and documents supporting the "defenses" raised by the defendant. Although it may be difficult or impossible for NCO to provide the information and materials, the request certainly is reasonable and justified. *Ocean Atlantic* supports plaintiff's position.

In Lawrence E. Jaffee Pension Plan v. Household Intern., Inc., 2006 WL 3445742 (N.D.Ill. Nov. 22, 2006), Judge Guzman overruled a Fed.R.Civ.P. 72(a) objection to a discovery order issued by Judge Nolan. The plaintiffs in that class action filed a motion to compel voluminous

---

[3] Plaintiff would still have to obtain the names, addresses and phone numbers of the class members, but this would only be done if the class is certified.

[4] Given how slippery defendant's position is on the issue is, a binding stipulation is the only way for plaintiff to ensure that such withdrawal will not prejudice plaintiff later in the litigation.

post-class information and documents that the Court did not believe would "serve to advance this case or otherwise assist plaintiffs in any meaningful way." There can be no mistake that the information and documents sought in this action will advance the case or otherwise assist the plaintiffs: plaintiff has asked for evidentiary materials and information surrounding NCO's defense. Again: NCO, not plaintiff, put these materials at issue.

*Ron Bianchi & Assoc., Inc. v. O'Daniel Automotive, Inc.*, 2003 WL 21919186 (N.D.Ind. Feb. 20, 2003) is easily distinguishable. The discovery at issue in that trademark infringement case was issued by plaintiff to defendant to determine how many infringements there had been -- an issue relevant to plaintiff's claims, not defendant's defenses. Plaintiff issued two interrogatories asking for the information: one asking for the total number of allegedly infringing items sold, and another asking for that same information broken down month-by-month. The Court compelled defendant to respond to the first, but not the second interrogatory, holding that the usefulness of breaking the violations down month-by-month was outweighed by the burden of taking the time to do so. After all, the *Bianchi* plaintiff would have what it needed to prove its case based upon a complete response to the first interrogatory.

Here, plaintiff has asked for information from defendant about the defendant's defenses, not plaintiff's claims as in *Bianchi*. Furthermore, there are no other sources of the information; in fact, NCO admits in its response that "Neither NCO, nor any third party, has the ability to provide plaintiff with the exact information that he seeks." This statement begs the question of whether defendant has raised this defense based upon evidence, or conjecture. See Fed.R.Civ.P. 11(b)(4).

**Conclusion**

Defendant put the materials sought in this motion at issue by asserting the "prior express consent" defense. It should therefore be compelled to produce complete responses by some date-certain, and be barred from introducing any materials thereafter.

Respectfully submitted,

/s/ Alexander H. Burke

Alexander H. Burke
BURKE LAW OFFICES, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com
www.BurkeLawLLC.com

# Exhibit 5

1            IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF ILLINOIS
2                   EASTERN DIVISION

3  ALAN DONNELLY, on behalf of   )
    himself and others similarly  )
4  situated,                  )
                         )
5          Plaintiff,      )
                         )
6  v.                     )  No. 09 c 2264
                         )
7  NCO FINANCIAL SYSTEMS, INC.,  )  Chicago, Illinois
                         )  October 8, 2009
8         Defendant.      )  9:30 o'clock a.m.

9            TRANSCRIPT OF PROCEEDINGS
         BEFORE THE HONORABLE RONALD A. GUZMAN
10

11  APPEARANCES:

12  For the Plaintiff:      BURKE LAW OFFICES, LLC
                      BY:  MR. ALEXANDER HOLMES BURKE
13                  155 North Michigan Avenue
                  Suite 9020
14                  Chicago, Illinois  60601
                  (312) 729-5288
15
    For the Defendant:      SESSIONS FISHMAN NATHAN &
16                  ISRAEL LLP
                  BY:  MR. JAMES KEVIN SCHULTZ
17                  55 West Monroe Street
                  Suite 1120
18                  Chicago, Illinois  60603
                  (312) 578-0990
19

20

21

22  Court Reporter:        NANCY C. LaBELLA, CSR, RMR, CRR
                  Official Court Reporter
23                  219 South Dearborn Street
                  Room 1222
24                  Chicago, Illinois  60604
                  (312) 435-6890
25                  Nancy_LaBella@ilnd.uscourts.gov

 1    (Proceedings heard in open court:)

 2         THE CLERK:  09 C 2264, Donnelly v. NCO Financial

 3  Systems, Incorporated.

 4         MR. BURKE:  Good morning, Judge.  Alexander Burke for

 5  the plaintiff.

 6         MR. SCHULTZ:  Good morning, your Honor.  Jim Schultz

 7  on behalf of the defendant.

 8         THE COURT:  Good morning.

 9         MR. BURKE:  Judge, we're here on two motions, the

10  defendant's motion to stay and the plaintiff's motion to

11  compel.

12         Your Honor, this morning I had realized in my horror

13  that I hadn't sent a courtesy copy to your chambers, and I

14  have one here with me now.  May I pass it up?

15         THE COURT:  I pulled it off the docket.

16         MR. BURKE:  Thank you.

17         THE COURT:  So as I gather, you want to stay the

18  proceedings because you think you're going to win a motion for

19  summary judgment?

20         MR. SCHULTZ:  Your Honor, I think it's a little bit

21  more detailed than that.  There's a couple of other issues at

22  play.

23         We do want to stay the class discovery, your Honor,

24  at this point in time because the evidence that's been

25  produced in discovery to this point is pretty clear that the

1  telephone number that we were allegedly calling unlawfully was
2  provided to the original creditor in this case. And it's a
3  clear statement of the law under both the FDCPA and the TCPA
4  in that situation that there isn't a claim.

5  The reason why we feel that the staying of the class
6  discovery is appropriate though is not just necessarily that
7  we think we're going to prevail on the motion. It's because
8  of the burden that the class discovery is going to impose on
9  my client. And that, we support with the affidavit that's
10  attached to our motion as Exhibit B. And in that motion --
11  I'm sorry, your Honor. In that affidavit, the vice president
12  for NCO that's in charge of the telephone system here details
13  the numerous steps that would be taken -- that would be
14  necessary to be taken to comply with the discovery on class.

15  What we are dealing with here, your Honor, is over
16  100 million telephone calls. And it would require an analysis
17  of all that data to establish many things; first of all, when
18  the calls were placed, whether or not the calls were placed to
19  the geographic location that's involved in the class, whether
20  or not those calls were placed to cell phones versus land
21  lines, whether or not those calls were placed through the
22  dialer system or manually, and then whether or not the calls
23  that were placed are tied to an account that we could then
24  identify so we have a class representative.

25  Mr. Stevens, in his affidavit, estimates that that

1 | would take several hundred hours to compile and that the stack
2 | of documents, if it was in paper form to look through, would
3 | be the equivalent to a ten-story building.

4 | So what we're asking for, your Honor, is quite simply
5 | let's put a pause on the class discovery until we determine
6 | whether or not there's even a case here for the single
7 | plaintiff. It's not that we don't want to do the discovery if
8 | it becomes necessary. But we just feel that, your Honor,
9 | there is a lot of issues about the merits of the case. And
10 | before my client should have to incur the large expense in
11 | both time and money, which would require creating special
12 | programs, requiring employees to be distracted from their
13 | normal job to have to tackle this, let's deal with the issue
14 | of whether or not the plaintiff actually consented to this
15 | phone call or not.

16 | And it's a straightforward legal issue. The motion
17 | is virtually drafted. We are just waiting on some affidavits
18 | right now to support that. We expect to have it on file here
19 | in a couple of weeks. And, again, it's not a complicated
20 | legal issue for your Honor to decide. And if we do prevail on
21 | that, then there is no class. So we would have saved the time
22 | and expense of everyone doing this.

23 | THE COURT: If you prevail on that, there's no cause
24 | of action, right?

25 | MR. SCHULTZ: Correct.

1        MR. BURKE:   Judge, I think everybody would agree that

2   numerosity was satisfied for this case; a hundred million

3   telephone calls.   Even if we're narrowing it to Chicago or

4   certain geographical regions and just to cell phones, we're

5   going to have more than 50 calls.

6        THE COURT:   I don't think it's numerosity he's aiming

7   at.

8        MR. BURKE:   The problem is that the defendant --

9   well, the problem is that the defendant has asserted this

10  prior expressed consent defense both to the plaintiff and to

11  the class.   I don't think -- first of all, as to my plaintiff,

12  I don't think that they're going to prevail on this factual

13  issue as to prior expressed consent.   And I also have a backup

14  plaintiff in case they somehow were able to prove this.

15       THE COURT:   Well, I don't have a backup plaintiff in

16  front of me so I'm not dealing with that.

17       MR. BURKE:   Understood.

18       THE COURT:   Any other lawsuit you might have pending

19  or you may want to file is entirely different from the lawsuit

20  you have now.

21       MR. BURKE:   Well --

22       THE COURT:   We're dealing with your client, the

23  client you have now, and is he representative of a class.   If

24  he doesn't have a cause of action, he doesn't represent a

25  class.   So the question is, does he have a cause of action.

1    Counsel is saying it's pretty clear from his records
2    apparently that your client gave them his phone number.
3              MR. BURKE:  I take issue with that assertion by
4    counsel because I haven't seen anything other than a phone
5    number in the records that leads me to believe that my client
6    provided the phone number to anybody.  And I --
7              THE COURT:  And your client denies it to you?
8              MR. BURKE:  Pardon me?
9              THE COURT:  And your client has denied it to you?
10             MR. BURKE:  Yes.
11             THE COURT:  Well, this is every class action; the
12   defendant wants the merits decided before we go to class and
13   the plaintiff wants the class determined before we decide
14   merits.
15             More often than not, it would take a long time to
16   determine the merits and defeat the whole purpose of a class
17   action if we go to merits first.  So why should I do it in
18   this case?  Because you think you have, again, a good chance
19   of winning on the merits?
20             MR. SCHULTZ:  It's more than that, again, your Honor.
21   And there's two issues here.  First of all, we're not raising
22   prior expressed consent of the class as a defense at this
23   time.  We're raising that just towards the plaintiff.  Our --
24   one of our contentions in this case -- and the reason why we
25   don't think class certification is ever appropriate -- is

1  because the analysis of determining whether or not each of
2  these individual class members gave prior expressed consent
3  takes away from the commonality and typicality requirements of
4  the class action.

5          THE COURT:  That's a whole different ball of wax.
6          MR. SCHULTZ:  Well, but it goes to the whole class
7  analysis, your Honor.  And --

8          THE COURT:  We're not at the class analysis, counsel.
9  You're telling me we shouldn't get there because you can prove
10 that this single plaintiff isn't representative because he
11 gave expressed consent.  That's your argument, right?

12         MR. SCHULTZ:  Combined with the burden that the class
13 discovery is going to impose on my client at this point in
14 time.

15         MR. BURKE:  Judge, if the prior expressed consent was
16 readily accessible from the defendant's records, I suspect we
17 would have seen a summary judgment motion within a month of
18 when the case was filed.  The case was filed in -- I think it
19 was filed in April.

20         THE COURT:  I think that's the problem.

21         MR. SCHULTZ:  Your Honor, what we've given
22 plaintiff's counsel in the course of the discovery that we've
23 already responded to is records from the original creditor in
24 this case, which contains the plaintiff's name, his social
25 security number, his address and the telephone number that we

1   were calling as a home number.  That's the documents that
2   plaintiff's counsel has already seen.

3          THE COURT:  So what evidence do you have that his
4   client gave your client that information?  Because I have got
5   to tell you, if people go on the Internet, they can probably
6   get that information about me without my consent.

7          MR. SCHULTZ:  Well, generally speaking, I don't think
8   that's true, your Honor, for cell phones.

9          Secondly, we have the records from our client, which
10  we've given in discovery.  And there's also been
11  representations made to us when this account was sold to my
12  client that that number was placed with the original creditor
13  by the plaintiff.  And that's what the --

14         THE COURT:  Somebody told you that?

15         MR. SCHULTZ:  That's going to be the affidavit, your
16  Honor, attached in support of our summary judgment motion.

17         THE COURT:  And if they file an affidavit from their
18  client saying not true, what happens to your summary judgment
19  motion?

20         MR. SCHULTZ:  Your Honor, under the FDCPA, our
21  argument will be that regardless of whether or not the
22  plaintiff gave it to the original creditor or not, we are
23  allowed to rely on the information provided to us by the
24  original creditor.  The original creditor has represented to
25  us that they obtained the number from the plaintiff.  Our --

1   our analysis at that point in time is complete.  We are

2   allowed to rely on the creditor unless we have some reason to

3   suspect that the information they're giving us isn't

4   trustworthy.  And we don't have any indication of that in the

5   case, your Honor.

6           MR. BURKE:  Judge, what we asked for --

7           MR. SCHULTZ:  Your Honor --

8           THE COURT:  One at a time.

9           MR. SCHULTZ:  At this point, your Honor, we have --

10  not only do we have the representation of the client, but

11  we're allowed to rely on that information.  If the plaintiff

12  has exception with that, their fight shouldn't be with us.

13  Their fight should be with the creditor who has represented

14  that they obtained the number from him.

15          MR. BURKE:  Judge, part of what we're asking for in

16  our motion to compel is any representations from the original

17  creditor to NCO that the information they provided was

18  accurate or that it wasn't a cell phone number.  But we don't

19  have anything like that.  That's part of our motion to compel.

20          THE COURT:  All right.  I'm going to deny the motion

21  to stay class discovery.  Go on with your discovery, folks.

22  Go on with your discovery.

23          And I might add, it's my general practice to allow

24  one -- that is numeral one -- motion for summary judgment in

25  any case.  I am not doing multiple motions in this case or any

1    other.  So choose carefully when you file your motion.

2            MR. SCHULTZ:  Understood, your Honor.

3            THE COURT:  All right.

4            MR. BURKE:  As to the motion to compel, your Honor?

5            THE COURT:  Well, the motion to compel will be

6    granted.  I think we just have to go forward and push with the

7    discovery.  When we get it all there, then we can make a

8    determination both as to the class certification and

9    ultimately on the dispositive motions.

10           MR. SCHULTZ:  Your Honor, as to the motion to compel,

11   a lot of the exceptions that plaintiff's counsel is taking is

12   he just doesn't like the answers that we've given.  I don't

13   know if you would like us to go through the individual

14   requests or maybe have the parties confer and report back to

15   you in a couple of days about this, because I think some of

16   these things can be worked out between the parties.  And I

17   think just a blanket granting of the motion without some sort

18   of discussion is inappropriate.

19           THE COURT:  I think you're probably right.

20           MR. BURKE:  Judge --

21           THE COURT:  We'll enter and continue the motion.  You

22   folks are going to have a face-to-face on the objections.  If

23   you don't get any satisfaction, then reassert your motion.

24           MR. BURKE:  Just as a matter of background, your

25   Honor, we worked on this stuff for a long time.

1           THE COURT:  Yes, you did.

2           MR. BURKE:  I gave them --

3           THE COURT:  But that was before I ruled on the motion

4    for summary judgment, which I suspect is part of what's been

5    holding up the negotiations on the discovery.

6           MR. BURKE:  They filed that motion on the eve of when

7    they had promised to provide those discovery responses.

8           THE COURT:  How long do you think they were

9    contemplating the motion --

10          MR. BURKE:  I don't know.

11          THE COURT:  -- as a way of keeping you from getting

12   responses to your discovery?

13          Have the face-to-face meeting.

14          MR. SCHULTZ:  Thank you, your Honor.

15          THE COURT:  Okay.

16          MR. BURKE:  Thank you.  Should we come back?

17          THE COURT:  If you don't get any satisfaction.

18          MR. BURKE:  Thank you.

19                        *    *    *    *    *

20

21   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.
22

23

     /s/ Nancy C. LaBella                    October 22, 2009
24   Official Court Reporter

25