## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ALAN DONNELLY, on behalf of himself and others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Judge Guzman |
| - vs- | ) ) | Case No.:    09 CV 2264 |
| NCO FINANCIAL SYSTEMS, INC., | ) ) | Magistrate Judge Nolan |
| Defendant. | ) ) | |

### NCO'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S AMENDED COMPLAINT

NOW COMES defendant NCO Financial Systems, Inc. ("NCO") by and through undersigned counsel, and for its answer to plaintiff's amended complaint, states as follows:

1.     Plaintiff Alan Donnelly brings this action to secure redress for violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA") and the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA").

**Answer:     NCO admits that plaintiff purports to bring an action for alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), but denies any liability, violations, and wrongdoing under the law.   Upon information and belief, plaintiff and NCO have settled plaintiff's claims under the Fair Debt Collection Practices Act ("FDCPA") and the Fair Credit Reporting Act ("FCRA"), and therefore, NCO denies the remaining allegations of ¶ 1.**

2.     This Court has federal question subject mater jurisdiction over the FDCPA claims under 28 U.S.C. §§ 1331, 1337, and 15 U.S.C. § 1692k.  The Court has federal question jurisdiction and Class Action Fairness Act jurisdiction over the TCPA claims. *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446 (7th Cir. 2005).  There is also supplemental jurisdiction under 28 U.S.C. § 1367, if *Brill* were to be overruled or abrogated for some reason, because the TCPA claims form part of the same case or controversy as the FDCPA claims.

**Answer:     NCO admits the allegations of ¶ 2 for jurisdictional purposes only, but denies any liability, violations and wrongdoing under the law.**

3.     Venue is proper because a substantial portion of the events complained of occurred in this District.

**Answer:     NCO admits the allegations of ¶ 3 for venue purposes only.**

4.     Plaintiff is an individual who resides in this district.

**Answer:     NCO admits the allegations of ¶ 4 upon information and belief.**

5.     NCO Financial Systems, Inc. ("NCO") is a debt collection agency that does business in this District.  Its registered agent in Illinois is CT Corporation System, 208 S. LaSalle Street, Suite 814, Chicago, IL  60604.

**Answer:     NCO admits the allegations of ¶ 5.**

6.     Defendant has made several telephone calls to plaintiff's cellular telephone, including on April 1, 2, 6, 8, 11 and 14, 2009.

**Answer:     NCO admits only that its records reflect that it made several telephone calls to plaintiff, including April 1, 2, 6, 8, 11 and 14, 2009, on a telephone**

**number reasonably believed to be plaintiff's residential telephone number.  Except as specifically admitted, NCO denies the allegations of ¶ 6.**

7.      Some or all of the calls to each plaintiff were made with one of NCO's thirty-three predictive dialers.  Each of NCO's thirty-three predictive dialers is regularly used to dial telephone numbers in such a way that no human intervention is necessary.

**Answer:      NCO admits only that, according to its records, all of the calls made to plaintiff were made through one of its CRS dialers.  Except as specifically admitted, NCO denies the remaining allegations of ¶ 7.**

8.      NCO's predictive dialers are CR Software LLC "Mercury Predictive Dialers" ("MPD").

**Answer:      NCO admits only that it uses, in part, "Mercury Predictive Dialers" provided by CR Software, LLC.  Except as specifically admitted, NCO denies the remaining allegations of ¶ 8.**

9.      NCO uses its MPDs to rapid-fire dial telephone numbers in order to attempt to contact alleged debtors.

**Answer:      NCO admits only that it uses dialers as part of its collection efforts to place telephone calls to consumers.  Except as specifically admitted, NCO denies the remaining allegations of ¶ 9.**

10.      If a person answers a phone that was dialed by the MPD, the system attempts to connect the recipient of the call with a live agent or employee of NCO.

**Answer:      NCO admits only that, depending on client requirements and the campaign parameters, that some calls that are made through its dialers will be**

**connected to a live agent or employee of NCO when the consumer answers the call. Except as specifically admitted, NCO denies the remaining allegations of ¶ 10.**

11.     If voice mail picks up, sometimes the MPD leaves a prerecorded voice message on the voice mail.  Sometimes, it just hangs up.

**Answer:     NCO admits only that, depending on client requirements and the campaign parameters, that some calls that are made through its dialers will leave messages when voice mail or an answering machine is detected.  Except as specifically admitted, NCO denies the remaining allegations of ¶ 11.**

12.     NCO purchased and uses the MPD in order to increase efficiency.

**Answer:     NCO admits only that the dialers are used, in part, to increase efficiency.  Except as specifically admitted, NCO denies the remaining allegations of ¶ 12.**

13.     CR Software LLC describes its MPD as such:

Outbound Predictive Dialing: This is the core functionality of a predictive dialer.  You designate a campaign of a large list of phone numbers to dial.

The dialer calls those numbers as quickly as technology allows and then routes the "live connects" (debtors) to your collectors who are logged into the campaign.

Bad phone numbers, answering machines, and operator intercepts are booked transactions and either redialed at a later time or moved to other processes as defined.

The dialer also regulates the rate it dials automatically so that your collectors don't get more calls than they can handle.

Typically, a group of collectors on the Mercury dialer will have four times (400%) more calls and talk time than collectors dialing manually.

And just in case you're wondering, collectors love taking calls on dialer campaigns because they collect more money that way.

(Exhibit A; paragraph breaks supplied)

> **Answer:**    **NCO admits the allegations of ¶ 13 upon information and belief.**

14.    This description of the MPD is accurate as to one or more of NCO's MPDs. Upon information and belief, this description is accurate as to *all* of NCO's MPDs.

> **Answer:**    **NCO admits the allegations of ¶ 14 upon information and belief.**

15.    NCO also sometimes leaves prerecorded voice mail messages when it makes calls.

> **Answer:**    **NCO admits only that, depending on client requirements and the campaign parameters, that it will leave messages during some calls.  Except as specifically admitted, NCO denies the remaining allegations of ¶ 15.**

16.    The automated messages are designed to comply with the requirements of *Foti v. NCO Financial Systems, Inc.*, 424 F.Supp.2d 643 (S.D. N.Y. 2006), which was recently implicitly affirmed in the Eleventh Circuit in *Edwards v. Niagara Credit Solutions, Inc.*, --- F.3d --- 2009 WL 3273300 (11th Cir. Oct. 14, 2009).

> **Answer:**    **NCO admits only that the messages it leaves, and all of its collection efforts, are designed to comply with all applicable laws, statutes, rules and regulations.  Except as specifically admitted, NCO denies the remaining allegations of ¶ 16.**

17.    More than forty of the 128 million calls made with NCO's MPD since August, 2008, were made to cell phones in the 773 and 312 area codes.

**Answer:     NCO is without sufficient knowledge or information that would allow it to either admit or deny the allegations of ¶ 17, which operates as a denial.**

18.     NCO left more than forty automatic voice messages since August, 2008 for cell phones in the 773 and 312 area codes.

**Answer:     NCO is without sufficient knowledge or information that would allow it to either admit or deny the allegations of ¶ 18, which operates as a denial.**

19.     Defendant left automated voice mail messages for plaintiff Donnelly when it made some or all of its calls to Donnelly.

**Answer:     NCO admits only that, according to its records, that it did leave messages for plaintiff.  Except as specifically admitted, NCO denies the remaining allegations of ¶ 19.**

20.     NCO knows that its calls are regulated by the TCPA.  It entered into a "sweetheart" class action settlement and injunction in the case *Bellows v. NCO*, case no. Case No. (*sic*) 3:07-cv-01413-W-AIB (S.D. Cal.) for almost identical claims.  The injunction permits NCO to keep calling cell phones using its autodialers and prerecorded messages.  Although the "Settlement Fund" was $950,000, approximately half of that amount reverted to NCO because there were only 29 claim forms.  Each of the 29 claimants received $70.  There were an estimated 512,000,000 autodialed calls during the class period, worth a statutory minimum of $500 apiece if made to cell phones.  NCO paid the class members $2,030 and the attorneys $300,000.

**Answer:     NCO admits only that it settled a disputed claim in *Bellows v. NCO*, that NCO did not admit liability or any violations of the TCPA in *Bellows*,**

**that as part of that settlement, NCO created a settlement fund of $950,000, that there were 29 claimants that made a claim after receiving due and proper notice, that each class member timely making a claim received $70, that NCO paid $2,030 in claims, $197,970 in *cy pres*, and that the class attorneys were paid $300,000. Except as specifically admitted, NCO denies the remaining allegations of ¶ 20.**

21.    NCO's "policy" as to TCPA compliance is "don't ask don't tell."  NCO "trusts" that the telephone numbers it receives from its creditor clients are not cell phone numbers, and/or were provided to the creditor by the consumer, unless the creditor specifically tells NCO that the phone numbers are cell phones.  If NCO knows that phone numbers are cell phone numbers, it does not use its MPDs.  Upon information and belief, based upon NCO's discovery responses, this is its only TCPA compliance procedure.

**Answer:    NCO admits only that, when it knows that a consumer's phone number is a cell phone number, that it does not use its dialers to call that number. Except as specifically admitted, NCO denies the remaining allegations of ¶ 21.**

22.    Unfortunately for debtors, NCO's policies turn a blind eye to the fact that many of the phone numbers it calls with its autodialers are cell phone numbers.

**Answer:    NCO denies the allegations of ¶ 22.**

23.    NCO obtains some numbers it calls from skip tracing companies or other third parties that are unrelated to creditors.

**Answer:    NCO admits the allegations of ¶ 23.**

24.    Upon information and belief, NCO made a decision to continue using its MPD and prerecorded messages, at least partially based upon the theory that a TCPA

class cannot be certified.  In other words, NCO made the economic decision to continue suing its autodialers and prerecorded messages without first checking whether the phone number it has is a cell phone because it would only have to defend (and settle) individual TCPA lawsuits.

**Answer:**     **NCO denies the allegations of ¶ 24.**

25.     Avoiding the violations alleged herein would have been possible for NCO, although NCO might argue that it was not economically feasible.

**Answer:**     **NCO denies that there were any violations as alleged, and therefore denies the allegations of ¶ 25.**

26.     NCO has telephones that are only capable of making calls that are dialed through human intervention.

**Answer:**     **NCO admits the allegations of ¶ 26.**

27.     The TCPA does not restrict calls to cell phones that are dialed by humans, and where humans are present on the line when the person called (or his voice mail) picks up.

**Answer:**     **Paragraph 27 directs no allegations at NCO, and instead is merely a conclusion of law to which no answer is required.  To the extent an answer is required, or to the extent that this paragraph misstates the law, NCO denies the allegations of ¶ 27.**

28.     In continuing to use its MPD, NCO puts law-abiding debt collection agencies at a competitive disadvantage.  These illegal systems are vastly more efficient and powerful than having a human being dial phone numbers.

**Answer:**      **NCO denies the allegations of ¶ 28.**

## COUNT I (TCPA Class Claim)

29.      Plaintiff incorporates all paragraphs of this Complaint.

**Answer:**      **NCO re-alleges and re-avers all paragraphs in response to the Complaint.**

30.      The Telephone Consumer Protection Act, 47 U.S.C. 227 restricts the making of telephone calls to cellular phones for commercial purposes that are made using "any automatic telephone dialing system or an artificial or prerecorded voice."  TCPA, § 227(b)(A)(iii).

**Answer:**      **Paragraph 30 contains no allegations and contains only a legal conclusion to which no answer is required.  To the extent any allegations are stated against NCO, to the extent an answer is required, or to the extent that the paragraph derogates from the law, NCO denies the allegations of ¶ 30.**

31.      Defendant made multiple telephone calls to plaintiff's cell phone using an automatic telephone dialing service and/or artificial or prerecorded voice, as proscribed by the TCPA.

**Answer:**      **NCO denies the allegations of ¶ 31.**

32.      Defendant's violations were negligent.

**Answer:**      **NCO denies the allegations of ¶ 32.**

## Class Allegations

33.      Plaintiff brings Count I, II and IV on behalf of a class pursuant to Fed. R. Civ. P. 23(b)(3).  The class is defined as:

**All natural and juridical persons with in the area codes 312 and 773 who were called by NCO, without prior express consent, on their cellular telephone service through the use of any automatic telephone dialing system (including a predictive dialer, an automated dialing machine, dialer, and auto-dialer) or artificial or pre-recorded voice, at any time after August 19, 2008.  The Class Members shall not include any officer, director, attorney, or heir or assign of NCO.  Further, the Class Members shall not include any judicial officer or juror who may consider this case.**

**Answer:       NCO admits that plaintiff purports to bring this action as a class action, but denies that this action or plaintiff's proposed class definition meets the requirements of Fed. R. Civ. P. 23 or that plaintiff is a proper class representative.**

34.     Plaintiff alleges two subclasses for Counts I and II:

a.      <u>HIPAA Subclass</u>:    All persons within the above class where NCO made such calls on behalf of a "covered entity" as defined in HIPAA.

b.      <u>Debt Buyer Subclass</u>:       All persons within the above class where NCO made such calls on behalf of a party other than the original creditor, such as a debt buyer.

**Answer:       NCO admits that plaintiff purports to bring this action on behalf of 2 subclasses, but denies that this action or plaintiff's proposed subclass definitions meet the requirements of Fed. R. Civ. P. 23 or that plaintiff is a proper class representative for the class or any subclass.**

35.     The class definition above is modeled after, and is substantively similar to, the class definition NCO agreed to in the *Bellows* settlement.  *Bellows v. NCO Financial Systems, Inc.*, 2008 WL 4155361, at * 6-8 (S.D. Cal. Sept. 5, 2008).  The *Bellows* court

was required to do an independent analysis of whether the settlement class met the requirements of Fed. R. Civ. P. 23, and found that it did. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997).

**Answer:**   **NCO admits only that the parties in *Bellows* agreed to the certification of a class, for settlement purposes only, which was approved by the Court.  Except as specifically admitted, NCO denies the allegations of ¶ 35.**

36.    The only terms that have been substantively changed from the class that was certified in *Bellows* are the time period and geographical limitation.  The subclasses were not a part of the *Bellows* settlement.

**Answer:**   **NCO admits that subclasses were not a part of the *Bellows* settlement.  Except as specifically admitted, NCO denies the allegations of ¶ 36.**

37.    In its Second Amended Answer and Affirmative Defenses to the original Complaint, NCO raised a "prior express consent" defense.

**Answer:**   **NCO admits, in the Second Amended Answer and Affirmative Defenses, that NCO alleged that plaintiff had given prior express consent to receipt of the calls made by NCO.   Except as specifically admitted, NCO denies the allegations of ¶ 37.**

38.    NCO does not know who, if any, of the class members provided "prior express consent" to be called using an autodialer or prerecorded or artificial message, except that NCO believes that plaintiff provided such.

**Answer:**   **NCO admits that plaintiff provided prior express consent. Except as specifically admitted, NCO denies the remaining allegations of ¶ 38.**

- 11 -

39.     Furthermore, the *Leckler I*, and section 227(b) definitions of "prior express consent" apply to the persons who fall into either one of the following two subclasses.

**Answer:     NCO denies the allegations of ¶ 39.**

<u>Explanation of HIPAA Subclass</u>

40.     The general rule under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") is that "covered entities" such as doctors are prohibited from sharing "protected health information" such as patient names, addresses, telephone numbers and medical information with "business associates" such as debt collectors like NCO Financial Systems, Inc.  45 C.F.R. § 164.502.

**Answer:     Paragraph 40 contains no allegations and contains only a legal conclusion to which an answer is not required.  To the extent any allegations are stated against NCO, to the extent an answer is required, or to the extent that the paragraph derogates from the law, NCO denies the allegations of ¶ 40.**

41.     A very limited exception exists: HIPAA permits sharing the "minimum [protected health information] necessary to accomplish the intended purpose of the use, disclosure or request."  45 C.F.R. § 164.502(b).

**Answer:     Paragraph 41 contains no allegations and contains only a legal conclusion to which an answer is not required.  To the extent any allegations are stated against NCO, to the extent an answer is required, or to the extent that the paragraph derogates from the law, NCO denies the allegations of ¶ 41.**

42.     Debt collectors are not "entitled" to call debtors in their efforts to collect debts.  Calling debtors is not "necessary" to the collection of debts.  The only required

- 12 -

communications under the FDCPA are written.  15 U.S.C. §§ 1692g, 1692e(11).  There are requirements for oral communications, but there is nothing that requires that a debt collector call a debtor, and there is nothing that expressly permits such, either.

**Answer:      Paragraph 42 contains no allegations and contains only a legal conclusion to which an answer is not required.  To the extent any allegations are stated against NCO, to the extent an answer is required, or to the extent that the paragraph derogates from the law, NCO denies the allegations of ¶ 42.**

43.     A debtor's telephone number is therefore not part of the "minimum necessary" to collect a debt, and defendant is and was not entitled to know the telephone numbers of the class members.

**Answer:      Paragraph 43 contains no allegations and contains only a legal conclusion to which an answer is not required.  To the extent any allegations are stated against NCO, to the extent an answer is required, or to the extent that the paragraph derogates from the law, NCO denies the allegations of ¶ 43.**

44.     Furthermore, because HIPAA prohibits disclosure of telephone numbers to debt collectors, patients who gave their cell phone numbers to "covered entities" had a reasonable expectation that the covered entity would comply with HIPAA.  Because the sharing of the telephone number impermissible (*sic*), any consent provided to the "covered entity" would not transfer to the "business associates."

**Answer:      NCO denies the allegations of ¶ 44.**

45.     Therefore, NCO had no right to know (at least from the debt buyer), or consent to call, plaintiff and the HIPAA subclass' telephone numbers, regardless of

whether the telephone number was provided to a "covered entity" in connection with the underlying medical transaction, for debt buyer accounts.

**Answer:      NCO denies the allegations of ¶ 45.**

Explanation of Debt Buyer Subclass

46.    The general rule under 47 U.S.C. § 227(b)(1)(A)(iii), is that no entity:

May make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice

* * *

To any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

**Answer:      Paragraph 46 contains no allegations and contains only a legal conclusion to which an answer is not required.  To the extent any allegations are stated against NCO, to the extent an answer is required, or to the extent that the paragraph derogates from the law, NCO denies the allegations of ¶ 46.**

47.    "Prior express consent" within the meaning of the statute is extremely limited, and is <u>not</u> evidenced by a consumer simply giving the creditor his telephone number.  *Leckler v. CashCall*, 554 F.Supp.2d 1025, 1029 (S.D. Cal. 2008) ("*Leckler I*"), vacated on distinguishable grounds, *Leckler v. CashCall, Inc.*, 2008 WL 5000528 (ND. Cal. Nov. 21, 2008) ("*Leckler II*").

**Answer:      NCO denies the allegations of ¶ 47.**

48.    The *Leckler I* was vacated on reconsideration because the Court found that the Hobbs Act, 28 U.S.C. § 2342, prohibited the Court from invalidating the Federal

Communications Commission's January 4, 2008 ruling, 07-232 (<u>Exhibit B</u>), which holds that provision of a cell phone number to a creditor in connection with an application for credit constitutes "prior express consent."

**Answer:      Paragraph 48 contains no allegations and contains only a legal conclusion to which an answer is not required.   To the extent any allegations are stated against NCO, to the extent an answer is required, or to the extent that the paragraph derogates from the law, NCO denies the allegations of ¶ 48.**

49.    *Leckler II* and the January 4, 2008, FCC order are inapplicable to the Debt Buyer subclass because the FCC Order does not mention, or contemplate, debt buyers.  It does mention "creditors" but context makes clear that the FCC meant to include only creditors who accept applications.

> The creditors are in the best position to have records kept in the usual course of business showing such consent, such as purchase agreements, sales slips, and credit applications.  [Id. at ¶ 10]

> We encourage creditors to include language on credit applications and other documents informing the consumer that, by providing a wireless telephone number, the consumer consents to receiving autodialed and prerecorded message calls from the creditor or its third party debt collector at that number.  See, e.g., EPIC Comments at 5 (creditors should be directed to obtain express authorization from customers in writing).  [*Id*. at fn. 37]

**Answer:      NCO denies the allegations of ¶ 49.**

50.    Even ACA International, the organization that requested the January 4, 2008, order, has advised that the FCC ruling does not transfer consent from the original creditor to a debt buyer.

**Answer:       Paragraph 50 contains no allegations and contains only a legal conclusion to which an answer is not required.   To the extent any allegations are stated against NCO, to the extent an answer is required, or to the extent that the paragraph derogates from the law, NCO denies the allegations of ¶ 50.**

51.     In an ACA International teleseminar entitled, "Don't Get Hung Up" Dial ACA's TCPA Experts" (February 25, 2009) the marketing flyer for which is attached as Exhibit C, expert TCPA and FDCPA attorneys experts John H. Bedard, Esq., of Franzen & Salzano P.C., and David Kaminski, Esq., of Carlson & Messer LLP opine that "prior express consent" is not transferred to debt buyers.

> Moderator:   Can prior cell consent be transferred to debt buyers when we purchase the account?
>
> Answer:       No.

Don't Get Hung Up: Dial ACA's TCPA Experts, at 1:15:00 – 1:15:07.

> Moderator:   John, I think you already answered this, but there has been a few questions popping up.  Does consent transfer from creditor to the debt purchaser?
>
> Mr. Bedard:   I think the answer is probably no.
>
> Moderator:   Okay.
>
> Mr. Bedard:   Here's why: Let's follow the chain of consent here.  Let's say the creditor does have consent, okay?  The creditor sells it to a debt buyer, alright, the debt buyer now does not have consent.  The debt buyer places the account with a collector, a very diligent collector like all of the ones that are on this telephone call, and the collector dials the phone manually and says "Hello, Ms. Consumer, may I call your cell phone number using our dialer?" and the consumer says, "Yes, please call me all the time, anytime." And so now the collector has consent to call using the dialer.  I believe that consent transfers back up to the debt buyer because the collector is the agent of the debt buyer.  However, when that consent, when that debt buyer

sells that account to somebody else I'm not certain that the consent travels with it because under the law its gotta be express prior consent, and according to the FCC, the consent has to be given to the creditor, i.e. the person who is, you know, making the calls. So I'm not certain that consent can travel that way. David, do you have any thoughts on that?

Mr. Kaminski Answer:     No. I don't think it can travel that way, and that's the problem there. I think consent is specific and I think it's also going to be narrowly interpreted by the courts. I mean, the FCC, in a sense, gave us a quasi-present in the FCC ruling, but how they're going to expand that consent and to who can take advantage of it, I think it's going to be narrowly interpreted.

Mr. Bedard Following Up: Now, let's change the fact pattern one way. Let's say the collector obtains consent that consent then travels back up to the creditor, the collector never gets a payment on that account, so the creditor pulls that account back and places it with agency number two. Does Agency Number Two have consent to call?   Yes.   Because the creditor, the creditor now has consent, and that consent is going to pass back down to the second agency.

Don't Get Hung Up: Dial ACA's TCPA Experts, at 1:20:12 – 1:22:48.

**Answer:      Paragraph 51 contains no allegations and contains only a legal conclusion to which an answer is not required.  To the extent any allegations are stated against NCO, to the extent an answer is required, or to the extent that the paragraph derogates from the law, NCO denies the allegations of ¶ 51.**

52.    Upon information and belief, there are more than 50 members of the proposed class and each subclass; sufficient to satisfy the numerosity requirement.

**Answer:      NCO is without sufficient knowledge or information that would allow it to either admit or deny the allegations of ¶ 52, which operates as a denial.**

53.     Common questions of law and fact exist as to all members of the class and predominate over any questions solely affecting any individual member of the class, including plaintiff.  Such questions common to the Class include, but are not limited to:

     a.     Whether defendant used an automatic telephone dialing system and/or an artificial or pre-recorded voice within the meaning of the TCPA with respect to telephone calls to class members' cellular phones;

     b.     Whether such practices violate the FDCPA; and

     c.     Damages.

**Answer:     NCO denies the allegations of ¶ 53, including subparts (a) through (c).**

54.     Plaintiff will fairly and adequately protect the interests of the class.  Plaintiff has no interests that might conflict with the interests of the class.  Plaintiff is interested in pursing his claims vigorously, and has retained counsel competent and experienced in class and complex litigation.

**Answer:     NCO denies the allegations of ¶ 54.**

55.     Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail.

**Answer:     NCO denies the allegations of ¶ 55.**

56.     No difficulties are likely to be encountered in the management of this class action that could preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

**Answer:        NCO denies the allegations of ¶ 56.**

57.     Defendants have acted on grounds generally applicable to the class, thereby making relief appropriate with respect to the class as a whole.  Prosecution of separate actions by individual members of the class, should they realize their rights have been violated, would likely create the risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct.

**Answer:        NCO denies the allegations of ¶ 57.**

58.     The identity of the class is likely identifiable from defendants' records.

**Answer:        NCO denies the allegations of ¶ 58.**

59.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.

**Answer:        NCO denies the allegations of ¶ 59.**

## <u>COUNT II (TCPA Class Claim—Willful)</u>

60.     Plaintiff incorporates all previous paragraphs of this complaint.

**Answer:        NCO re-alleges and re-avers its Answer to all previous paragraphs as if set forth fully herein.**

61.     The violations of the Telephone Consumer Protection Act, 47 U.S.C. 227, identified above when used in connection with collection of a consumer debt were willful.

**Answer:**     **NCO denies the allegations of ¶ 61.**

62.     Plaintiff brings this Count on behalf of the same class and subclass as is identified in Count I.  The difference is that this Count alleges that the violations were "willful" within the meaning of the TCPA, and thus justify enhanced damages of three times the statutory amount of $500, for $1,500 per call.

**Answer:**     **NCO admits that plaintiff purports to bring a class action for alleged willful violations of the TCPA, but denies any liability, violations, and wrongdoing under the law.   Except as specifically admitted, NCO denies the allegations of ¶ 62.**

## COUNT III (TCPA Class Claim—Injunctive Relief)

63.     Plaintiff incorporates all previous paragraphs of this complaint.

**Answer:**     **NCO re-alleges and re-avers its Answer to all previous paragraphs as if set forth fully herein.**

64.     The TCPA prohibits the use of an automatic dialing system and/or prerecorded or artificial voice messages to make phone calls to cell phones.

**Answer:**     **NCO denies the allegations of ¶ 64 as an incomplete statement of the law.**

65.     The TCPA 47 U.S.C. § 227(b)(3), provides a private right of action for injunctive relief.

**Answer:     Paragraph 65 contains no allegations and contains only a legal conclusion to which an answer is not required.  To the extent any allegations are stated against NCO, to the extent an answer is required, or to the extent that the paragraph derogates from the law, NCO denies the allegations of ¶ 65.**

66.     Defendant has a pattern and practice of making telephone calls in violation of 47 U.S.C. § 227(b), including calls to plaintiff.

**Answer:     NCO denies the allegations of ¶ 66.**

67.     Upon information and belief, defendant continues to call cell phones in violation of section 227(b), without regard to the TCPA.

**Answer:     NCO denies the allegations of ¶ 67.**

68.     The defendant is likely to continue to violate the TCPA without an order enjoining it from doing so.

**Answer:     NCO denies the allegations of ¶ 68.**

69.     Plaintiff brings Count III on behalf of a class pursuant to Fed. R. Civ. P. 23(b)(2), for injunctive relief.  Plaintiff requests that the Court permanently enjoin defendant from making calls to cell phones using its MPD, and enjoin defendant from making calls to cell phones using an artificial or prerecorded voice message, unless it can show that the recipient provided prior express consent to receive such calls.

**Answer:     NCO admits that plaintiff purports to bring a class action for injunctive relief based on alleged violations of the TCPA, but denies any liability, violations, and wrongdoing under the law and denies that plaintiff's purported class**

**meets the requirements of Fed. R. Civ. P. 23.  Except as specifically admitted, NCO denies the allegations of § 69.**

70.    Plaintiff is entitled to have his rights, status and legal relations under the TCPA relating to NCO's calling of cell phones using an automatic dialing system and/or artificial or prerecorded voice message.

**Answer:      NCO denies the allegations of ¶ 70.**

71.    The class definition is identical and overlapping with the TCPA class in Count II in paragraph 33, except that it has no date restrictions and no geographical restrictions.

**Answer:      NCO admits that plaintiff purports to bring a class action for injunctive relief on behalf of the same class as defined in Count II, without the date or geographic limitations, but denies any liability, violations, and wrongdoing under the law and denies that plaintiff's purported class meets the requirements of Fed. R. Civ. P. 23.  Except as specifically admitted, NCO denies the allegations of § 71.**

## COUNT IV (FDCPA Individual Claim)

**Answer to ¶¶ 72-73:      The parties have agreed to the settlement of plaintiff's individual FDCPA claim.  As a result, and with the agreement of plaintiff's counsel, NCO need not file an answer to Count IV.**

## COUNT V (FCRA Individual Claim)

**Answer to ¶¶ 74-85:      The parties have agreed to the settlement of plaintiff's individual FCRA claim.  As a result, and with the agreement of plaintiff's counsel, NCO need not file an answer to Count V.**

AND NOW, in further Answer to the Amended Complaint, NCO avers as follows:

## FIRST AFFIRMATIVE DEFENSE

1.      One or more of the Counts contained in the Complaint fail to state a claim against NCO upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

1.      One or more of the counts in the Complaint are barred by the applicable statute of limitations.

## THIRD AFFIRMATIVE DEFENSE

1.      Any violation that may have occurred in this case, or any loss, injury, damage, or detriment suffered by plaintiff or any class member, was directly and proximately caused and contributed to by the breach, conduct, acts, omissions, activities, carelessness, recklessness, negligence, and/or intentional misconduct of plaintiff, the class member, or a third party, and not by NCO.

## FOURTH AFFIRMATIVE DEFENSE

1.      Plaintiff's proposed class definition fails to comply with Federal Rule of Civil Procedure 23, and this action is not otherwise proper for class action certification.

## FIFTH AFFIRMATIVE DEFENSE

1.      While NCO does not believe that it carries the burden of establishing prior express consent under the TCPA, 47 U.S.C. § 227(b)(1)(A), out of an abundance of caution, and in an effort to conform the pleadings to the evidence and disputes between the parties, NCO asserts that plaintiff provided prior express consent to the complained-of telephone calls, as did all of the proposed class members.

## SIXTH AFFIRMATIVE DEFENSE

1.     NCO was justified and privileged in taking the actions alleged in the Complaint.

## SEVENTH AFFIRMATIVE DEFENSE

1.     Any alleged acts or omissions of NCO that give rise to plaintiff or any class member's claim are the result of an innocent mistake.

2.     In good faith, NCO relies on the information provided to it by its creditor clients.

3.     To the extent that any of the putative class members were called on a number given to NCO by the creditor client, and to the extent that the putative class member did not give consent to the creditor for calls to the provided number, NCO was reasonably mistaken.

## EIGHTH AFFIRMATIVE DEFENSE

1.     Plaintiff acquiesced in and/or consented to the acts and omissions alleged in the Complaint herein.

## NINTH AFFIRMATIVE DEFENSE

1.     Plaintiff and the class members have failed, refused, and/or neglected to take reasonable steps to mitigate their alleged damages, if any, thus barring or diminishing any recovery.

## TENTH AFFIRMATIVE DEFENSE

1.     NCO had no sufficient intent for the commission of the matters alleged in the Complaint.

## ELEVENTH AFFIRMATIVE DEFENSE

1.      Although NCO specifically denies it has any liability with respect to the claims and allegations, NCO asserts that it has not willfully violated the TCPA in the manner alleged, and any violation(s) that may have occurred were unintentional.

## TWELFTH AFFIRMATIVE DEFENSE

1.      NCO denies that the calls it was making, and the equipment it was using to make those calls, was regulated by the TCPA.

## THIRTEENTH AFFIRMATIVE DEFENSE

1.      Plaintiff and the class are barred from collaterally attacking the *Bellows* class settlement and this Court is without jurisdiction to disturb the *Bellows* settlement or related injunction.


        WHEREFORE, NCO Financial Systems, Inc. respectfully requests that this answer be deemed good and sufficient, plaintiff's amended lawsuit be dismissed, with prejudice, at plaintiff's costs, pursuant to federal law, plaintiff be ordered to pay reasonable attorney's fees and costs for NCO, and for all other general and equitable relief.

                                Respectfully submitted,


                                /s/ James K. Schultz
                                Attorney for NCO Financial Systems, Inc.

David Israel
Bryan C. Shartle
SESSIONS, FISHMAN, NATHAN & ISRAEL, L.L.C.
Lakeway Two, Suite 200
3850 North Causeway Boulevard
Metairie, LA 70002-7227
Telephone:  (504) 828-3700
Facsimile:  (504) 828-3737
E-Mail:       disrael@sessions-law.biz
                   bshartle@sessions-law.biz

James K. Schultz
SESSIONS, FISHMAN, NATHAN & ISRAEL, L.L.C.
55 West Monroe Street
 Suite 1120
Chicago, Illinois  60603
Telephone:  (312) 578-0990
Facsimile:  (312) 578-0991
E-Mail:       jschultz@sessions-law.biz

Attorneys for Defendant NCO Financial Systems, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 10th day of February 2010, a copy of the foregoing Answer and Affirmative Defenses to Plaintiff's Amended Complaint was filed electronically in the ECF system.  Notice of this filing will be sent to the parties of record by operation of the Court's electronic filing system, including plaintiff's counsel as described below. Parties may access this filing through the Court's system.

      Alexander H. Burke
      BURKE LAW OFFICES, LLC
      155 N. Michigan Ave., Suite 9020
      Chicago, IL 60601
      (312) 729-5288
      (312) 729-5289 (fax)
      ABurke@BurkeLawLLC.com

      /s/ James K. Schultz_____
      Attorney for NCO Financial Systems, Inc.